1  JAMES H. HOLL, III. CA Bar No. 177885
2  W. DAMON DENNIS
   SARAH MATLACK WASTLER
3  Attorneys for Plaintiff
4  COMMODITY FUTURES
   TRADING COMMISSION
5  1155 21st Street, N.W.
6  Washington, D.C. 20581
   Telephone: (202) 418-5000
7  jholl@cftc.gov
8  wdennis@cftc.gov
   swastler@cftc.gov
9

10            **THE UNITED STATES DISTRICT COURT**
         **FOR THE EASTERN DISTRICT OF CALIFORNIA**
11                  **SACRAMENTO DIVISION**

12

13  COMMODITY FUTURES
14  TRADING COMMISSION,

15     Plaintiff,                        Civil Case No.

16
            v.
17                                        **COMPLAINT FOR INJUNCTIVE**
18  ESHAQ M. NAWABI, individually         **RELIEF, CIVIL MONETARY**
    and d/b/a, NAWABI                     **PENALTIES, RESTITUTION,**
19  ENTERPRISE, and                       **AND OTHER EQUITABLE**
20  HYPERION CONSULTING INC.,             **RELIEF**

21     Defendants.
22
23
24
25
26
27
28

1   Plaintiff, Commodity Futures Trading Commission ("Commission" or

2   "CFTC"), by and through its attorneys, alleges as follows:

3

4   ## I.   <u>SUMMARY</u>

5

6   1.   From at least October 2019 through the present (the "Relevant Period"),

7   Nawabi Enterprise and Hyperion Consulting Inc. ("Hyperion"), by and through Eshaq

8   M. Nawabi ("Nawabi"), and Nawabi, individually, (collectively, "Defendants")

9   operated a fraudulent scheme in which Defendants, by and through Nawabi, solicited,

10   accepted, and misappropriated funds for a pooled investment in off-exchange

11   leveraged or margined retail foreign currency exchange ("forex") contracts ("forex

12   pool").

13   2.   Defendants knowingly made fraudulent and material misrepresentations

14   and omissions, in both conversations and written communications, about their forex

15   trading and returns to persuade potential and existing forex pool participants ("Pool

16   Participants") to transfer funds to Defendants for the purpose of participating in a

17   forex pool.  At least seven Pool Participants transferred no less than $543,000 to

18   Defendants for the purpose of participating in Defendants' forex pool.

19   3.   To entice prospective Pool Participants, Defendants knowingly and

20   falsely represented, among other things, that:  (1) Defendants had historically made

21   large profits (between 8–25% per month) for themselves and Pool Participants from

22   trading forex; (2) Pool Participants would realize profits of 8–25% per month on their

23   funds with minimal risk; (3) Defendants would trade forex with the funds deposited

24   by Pool Participants; and (4) upon request, Pool Participants could withdraw their

25   funds at any time.

26   4.   Instead of trading as promised, Defendants misappropriated pool funds.

27   While some of the misappropriated funds were used by Nawabi for his own personal

28

benefit, Defendants used other misappropriated pool funds to pay other Pool Participants in a manner akin to a Ponzi scheme.

5.     To conceal Defendants' misappropriation, Defendants created and issued false account statements that misrepresented trading returns purportedly earned by Pool Participants.  When Pool Participants requested return of their funds, Defendants either ignored the requests, provided bogus promises and excuses, or engaged in conduct designed to delay payouts to Pool Participants for as long as possible.

6.     Defendants' fraudulent conduct is ongoing.  Nawabi has made fraudulent excuses for not returning funds to at least one Pool Participant as recently as November 2021.  As recently as March of 2022, Ponzi-like payments were made by Nawabi to another Pool Participant.

7.     Nawabi Enterprise and Hyperion, are acting as unregistered Commodity Pool Operators ("CPOs"), and Nawabi, is acting as an unregistered Associated Person ("AP") of Nawabi Enterprise and/or Hyperion.

8.     Defendants also did not set up the forex pool in the manner required by the Regulations, did not receive Pool Participant funds in the name of the forex pool, and commingled Pool Participant funds with their own.

9.     By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6k(2), 6m(1), 6o(1)(A)–(B), and 2(c)(2)(C)(iii)(I)(cc), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 4.20(a)(1), (b)–(c), 5.2(b)(1)–(3), and 5.3(a)(2) (2021).

10.     At all relevant times, Nawabi's acts were committed within the scope of his employment, agency, or office with Nawabi Enterprise and Hyperion.  Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021), Nawabi Enterprise and Hyperion are liable as principals for Nawabi's actions in violation of the Act and Regulations.

11.    At all times during the Relevant Period, Nawabi was the controlling person of Nawabi Enterprise and Hyperion and knowingly induced the underlying violations or failed to act in good faith.  Therefore, pursuant 7 U.S.C. § 13c(b), Nawabi is liable as the controlling person for the actions of Nawabi Enterprise and Hyperion in violation of the Act and Regulations.

12.    Accordingly, pursuant to 7 U.S.C. § 13a-1 and § 2(c)(2)(C), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations promulgated thereunder. In addition, the Commission seeks civil monetary penalties, restitution, and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary or appropriate.

13.    Unless restrained and enjoined by this Court, Defendants will likely continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as described below.

## II.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, 7 U.S.C. § 13a-1, provides that the U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.  7 U.S.C.

§ 2(c)(2)(C), subjects the forex solicitations and transactions at issue in this action to, *inter alia*, 7 U.S.C. §§ 6b, 6*o*, as further described below.

15.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendants reside in, transact, or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District.  Additionally, some of the defrauded Pool Participants reside in and were solicited in this District.

## III.     THE PARTIES

16.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility of administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1–26, and the Commission's Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

17.     Defendant **Eshaq M. Nawabi** is a resident of either Salida, California, or Manteca, California.  Nawabi is the Chief Executive Officer of Hyperion.  Nawabi also d/b/a Nawabi Enterprise.  Nawabi has never been registered with the Commission in any capacity.

18.     Defendant **Nawabi Enterprise** is an unincorporated California company.  During the Relevant Period, Nawabi listed Nawabi Enterprise's mailing address as a specific location in Salida, California, which, upon information and belief, is also one of Nawabi's home addresses.  Nawabi is Nawabi Enterprise's control person.  Nawabi Enterprise has never been registered with the Commission in any capacity.

19.     Defendant **Hyperion Consulting Inc.,** was incorporated in California on November 23, 2020.  During the Relevant Period, Hyperion's address was listed as either in Tracy, California, or Manteca, California.  Nawabi is both Hyperion's Chief

1  Executive Officer ("CEO") and control person.  Hyperion has never been registered
2  with the Commission in any capacity.

3

4                        IV.    **FACTS**

5

6  **A.    Defendants' Fraudulent Solicitation**

7        20.     During the Relevant Period, Nawabi held himself out both as an
8  unincorporated d/b/a "Nawabi Enterprise" and as the CEO of Hyperion.

9        21.     During the Relevant Period, Defendants, through the acts of Nawabi,
10  solicited prospective Pool Participants through telephone calls, emails, text messages,
11  and word of mouth, seeking out individuals who would agree to let Nawabi trade
12  forex on their behalf, ostensibly through his business ventures:  Nawabi Enterprise
13  and/or Hyperion.

14        22.     Rather than open an account in the name of either or both enterprises, in
15  the fall of 2019, Nawabi opened a joint personal checking account in his name and in
16  the name of a family member at JP Morgan Chase Bank, N.A. ("Chase"), (the "Chase
17  account").  Nawabi subsequently opened two additional personal accounts at (i) Bank
18  of America N.A. in August 2021 and (ii) Wells Fargo Bank, N.A. in August 2021, as
19  well as a business account at (iii) U.S. Bank N.A. in Hyperion's name in December
20  2020 that Defendants used to receive and/or disburse Pool Participant funds (with the
21  Chase account, collectively, the "Nawabi-controlled bank accounts").  The Nawabi-
22  controlled bank accounts contained funds that were unrelated to Defendants'
23  purported forex pool.

24        23.     Throughout the Relevant Period, Defendants, through Nawabi, falsely
25  and fraudulently represented to Pool Participants that:  (1) Defendants had
26  historically made large profits (between 8–25% per month) for themselves and Pool
27  Participants from trading forex; (2) Pool Participants would realize profits of 8–25%

28

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER
EQUITABLE RELIEF

per month on their funds with minimal risk; (3) Defendants would trade forex with the funds deposited by Pool Participants; and (4) Pool Participants could withdraw their funds within three to five business days of any such request.

24.     Additionally, Defendants represented to Pool Participants, *inter alia*, that Nawabi:

(i)     pools his clients' funds together and uses an algorithm he created to determine when to make trades on foreign currency;

(ii)    earned 10–12% per month during the prior 24-month period, 13–15% per month over the prior 12 months, and 8–9% per month over the prior three months;

(iii)   operates two pooled trading accounts:  a "conservative" account and an "aggressive" account, which earns about 20–25% per month;

(iv)    is being advised by an "SEC attorney" on all appropriate legal issues;

(v)     has $11 million in "his Forex investment fund" of which roughly 85% is of his own money; and

(vi)    would return a Pool Participant's funds within three to five business days after the Pool Participant notified Nawabi of their intent to withdraw funds from the forex pool.

25.     The statements described in paragraphs 23 and 24 are false.  As set forth more fully below, Defendants did not transfer any Pool Participant funds to a forex trading account.  Moreover, Defendants repeatedly failed to timely return Pool Participants' funds upon their request.

26.     Defendants also, among other things, failed to disclose that they were not properly registered with the Commission; thus, they were not authorized to trade forex with Pool Participants' funds.

27.     Based upon Defendants' misrepresentations and omissions, Pool Participants entered into a written "Investment Agreement" with either Nawabi Enterprise or Hyperion, with Nawabi acting as the signatory for both entities. Nawabi provided the Investment Agreement to Pool Participants by email, or through other means or instrumentalities of interstate commerce.

28.     The Investment Agreement provided that "the Company shall earn profit [sic] for the Investor in a monthly changing APR [sic] until the termination.  All profits left in will be compounded monthly."  The Investment Agreement also provided that the sole compensation for Defendants for their forex trading services was to be from "monthly profits" and varied in amount between 10% to 15%.  The Investment Agreement included a provision indicating that Pool Participant funds were "secured" by "security equity in the fund," and the "Minimum balance of equity" was identified as "$5,237,819.72."

29.     Once an "Investment Agreement" was executed, Nawabi deposited Pool Participants' funds into a Nawabi-controlled bank account, for participation in the purported pooled forex trading.

30.     Through their misrepresentations and omissions¸ at least seven Pool Participants deposited no less than $543,000 into the Nawabi-controlled accounts.

**B.     Defendants Misappropriated Pool Participants' Funds**

31.     During the Relevant Period, rather than using Pool Participants' funds for trading forex, as Defendants had represented they would, Defendants, through the acts of Nawabi, instead used those Pool Participant funds for Nawabi's personal benefit and to make Ponzi payments.

32.     Specifically, Nawabi used Pool Participants' funds for, among other things, purchases at luxury car dealerships, retail purchases, an Onlyfans.com account, meals, entertainment, travel, and cash withdrawals.

33.     As one example, on January 24, 2020, a Pool Participant made a $50,000

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER EQUITABLE RELIEF

deposit into the Chase account and all of the funds were used to pay expenses unrelated to trading forex.  Nawabi used the majority of the funds for a $40,000 payment to a car dealer in Redwood City, California, and used the remainder to pay for food, his cell phone expense, and gas.

34.     To the extent some Pool Participants have received funds back from Defendants, those funds did not originate from any known forex trading firm.  In at least one instance, funds paid to a Pool Participant were misappropriated by Defendants from other Pool Participants, in the nature of a Ponzi scheme.

35.     Further, as recently as March of 2022, Ponzi payments were made by Nawabi to a Pool Participant.

36.     To date, despite repeated requests to Nawabi for the return of their funds, multiple Pool Participants have not received their funds back from the Defendants.

37.     For example, in mid-October 2021, one Pool Participant attempted to terminate his Investment Agreement with Defendants, and demanded a return of his funds.  However, Nawabi failed to return any of his funds, instead, making numerous implausible excuses regarding his failure to do so.

38.     In addition, Nawabi has made fraudulent excuses for not returning funds to at least one Pool Participant as recently as November 2021.

**C.    False Account Statements**

39.     To conceal their lack of forex trading and misappropriation of Pool Participant money, Defendants, through Nawabi, issued false monthly account statements and made other oral and written misrepresentations to lull Pool Participants into leaving their funds in Defendants' control.

40.     Defendants routinely failed to send pool participants monthly account statements or when they did send them, they were often sent late.  This conduct caused more than one Pool Participant to make repeated requests to Nawabi to send

the monthly account statements.

41.     When Nawabi did issue account statements to Pool Participants supposedly reflecting forex trading and profits, they were false.

42.     For example, despite receiving monthly account statements showing gains of roughly 8–9% per month, one Pool Participant began to question the legitimacy of Nawabi's forex trading because he noticed that his monthly account statements appeared to have been altered, as the columns and rows were aligned differently on different parts of the page, suggesting that the text had been manually shifted (rather than caused by a file conversion error).

43.     Further, several Pool Participants noted that their statements contained inaccurate/conflicting information, as the stated amount of profit earned from the trading did not match the profit percentage calculated.

44.     In addition to issuing the monthly account statements, Nawabi advised some Pool Participants, both orally and in written communications, that their funds were making profits.

45.     The profit representations made by Defendants in the monthly account statements and in other oral and written communications are false.  There is no evidence that Defendants transferred any Pool Participant funds to a forex trading account.  Rather, Defendants misappropriated Pool Participant funds for Nawabi's personal use and to make Ponzi payments.

**D.     Nawabi Enterprise and Hyperion Are Unregistered CPOs, and Nawabi Is an Unregistered AP of a CPO**

46.     During the Relevant Period, Nawabi Enterprise and Hyperion, through Nawabi, each are acting as an unregistered CPO by soliciting funds from individuals who were not Eligible Contract Participants ("ECP"), as defined in 7 U.S.C. § 1a(18)(A)(xi), for a forex pool that was not an ECP, as defined in 7 U.S.C. § 1a(18)(A)(iv), for the purpose of engaging in retail forex transactions.

47.     During the Relevant Period, Nawabi is acting as an unregistered AP of two CPOs by soliciting Pool Participants and prospective Pool Participants for participation in a forex pool, while associated with Nawabi Enterprise and Hyperion as a partner, officer, employee, or similar agent.

**E.     Nawabi Is a Controlling Person of Nawabi Enterprise and Hyperion**

48.     Nawabi is a controlling person of both Nawabi Enterprise and Hyperion. As stated above, Nawabi was interchangeable with Nawabi Enterprise.  In fact, Nawabi did business as Nawabi Enterprise, an unincorporated entity.  Nawabi was also Hyperion's CEO.  Specifically, Nawabi executed Investment Agreements on behalf of Nawabi Enterprise and Hyperion; represented to Pool Participants that he was personally and solely responsible for trading Pool Participant funds; and was the sole source of information for Pool Participants regarding Nawabi Enterprise and Hyperion, including any information regarding the status of their funds.  Nawabi also had control over the Nawabi-controlled bank accounts into which Pool Participants transferred funds for the purported purpose of trading forex.

**F.     Nawabi Is Acting as an Agent for Nawabi Enterprise and Hyperion**

49.     Through his solicitation of prospective and existing Pool Participants and his continued communication with Pool Participants regarding their purported trading success on behalf of both Nawabi Enterprise and Hyperion, Nawabi is acting as an agent of both entities.

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER EQUITABLE RELIEF

## V.      VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE
### Violations of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b) (2021)
### (Forex Fraud by Misappropriation, Misrepresentations and Omissions, and False Statements)
### (All Defendants)

50.      Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

51.      7 U.S.C. § 6b(a)(2)(A)–(C) makes it unlawful:

(2)      for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market—

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person[.]

52.      7 U.S.C. § 1a(18)(A)(xi), defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to

manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.

53.     7 U.S.C. § 1a(18)(iv), defines a commodity pool as having assets exceeding $5,000,000 and "formed and operated by a person subject to regulation under this chapter or a foreign person performing a similar role or function subject as such to foreign regulation (regardless of whether each investor in the commodity pool or the foreign person is itself an eligible contract participant) provided, however, that for purposes of section 2(c)(2)(B)(vi) of this title and section 2(c)(2)(C)(vii) of this title, the term 'eligible contract participant' shall not include a commodity pool in which any participant is not otherwise an eligible contract participant."

54.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex "shall be subject to . . . [7 U.S.C. §] 6b," except in circumstances not relevant here.  Moreover, under 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to forex transactions described herein "as if" they were a contract of sale of a commodity for future delivery because they were "offered to, or entered into with, a person that is not an" ECP.  Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an account or pooled investment vehicle that is offered for the purpose of trading, or that trades," forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

55.     17 C.F.R. § 5.2(b) provides, in relevant part, that:

> [i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:
>
> (1)   To cheat or defraud or attempt to cheat or defraud any person;
>
> (2)   Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or

1

2

   (3) Willfully to deceive or attempt to deceive any person
     by any means whatsoever.

3    56.  Defendants, by use of the mails or by any means or instrumentality of

4 interstate commerce, directly or indirectly, in connection with retail forex

5 transactions, knowingly or recklessly:  (1) misappropriated Pool Participant funds;

6 (2) made material misrepresentations and omissions with scienter regarding, among

7 other things, the profitability of trading forex with Defendants; and (3) issued false

8 monthly account statements to conceal their fraudulent conduct.

9    57.  By reason of the foregoing, Defendants violated 7 U.S.C. § 6b(a)(2)(A)–

10 (C) and 17 C.F.R. § 5.2(b)(1)–(3).

11    58.  The foregoing acts, misrepresentations, omissions, and failures occurred

12 within the scope of Nawabi's employment or office with Nawabi Enterprise and/or

13 Hyperion.  Therefore, Nawabi Enterprise and/or Hyperion are liable for his acts,

14 misrepresentations, omissions, and failures in violation of 7 U.S.C. § 6b(a)(2)(A)–(C)

15 and 17 C.F.R. § 5.2(b)(1)–(3), pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

16    59.  Nawabi controls Nawabi Enterprise and Hyperion, directly or indirectly,

17 and did not act in good faith or knowingly induced, directly or indirectly, Nawabi

18 Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C.

19 § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7

20 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3).

21    60.  Each misappropriation, misrepresentation and omission of material fact,

22 and false statement, including but not limited to those specifically alleged herein, is

23 alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17

24 C.F.R. § 5.2(b)(1)–(3).

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER
EQUITABLE RELIEF

1

2       **COUNT TWO**
        **Violation of 7 U.S.C. § 6*o*(1)(A)–(B)**
3       **(Fraud and Deceit by CPOs and an AP of CPOs)**
        **(All Defendants)**
4

5       61.     Paragraphs 1 through 49 are re-alleged and incorporated herein by

6   reference.

7       62.     7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person:

8               engaged in a business that is of the nature of a commodity
                pool, investment trust, syndicate, or similar form of enterprise,
9               and who, in connection therewith, solicits, accepts, or receives
                from others, funds, securities, or property, either directly or
10              through capital contributions, the sale of stock or other forms
                of securities, or otherwise, for the purpose of trading in
11              commodity interests, including any—
12

13                  i.  commodity for future delivery, security futures
14                      product, or swap; [or]

15                  ii. agreement, contract, or transaction described in
16                      [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection
                        2(c)(2)(D)(i) [of the Act].
17

18      63.     Pursuant to 17 C.F.R. § 5.1(d)(1) (2021), and subject to certain

19  exceptions not relevant here, any person who operates or solicits funds, securities, or

20  property for a pooled investment vehicle and engages in retail forex transactions is

21  defined as a CPO.

22      64.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or

23  transactions" in retail forex and accounts or pooled investment vehicles in retail forex

24  "shall be subject to . . . [7 U.S.C. §] 6*o*," except in circumstances not relevant here.

25      65.     Regulation 1.3, 17 C.F.R. § 1.3 (2021), defines an AP of a CPO as any

26  natural person associated with:

27              (3) A [CPO] as a partner, officer, employee, consultant, or
28                  agent (or any natural person occupying a similar status or

performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged[.]

66.     Pursuant to 17 C.F.R. § 5.1(d)(2), any person associated with a CPO "as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves:  (i) [t]he solicitation of funds, securities, or property for a participation in a pooled investment vehicle; or (ii) [t]he supervision of any person or persons so engaged" is an AP of a CPO.

67.     During the Relevant Period, Nawabi Enterprise and Hyperion solicited funds, securities, or property for a pooled investment vehicle for the purpose of engaging in retail forex transactions; therefore, Nawabi Enterprise and Hyperion are acting as CPOs, as defined by 7 U.S.C. § 1a(11) and17 C.F.R. § 5.1(d)(1).

68.     During the Relevant Period, Nawabi was associated with Nawabi Enterprise and Hyperion, both CPOs, as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool.  Therefore, Nawabi was an AP of two CPOs as defined by 17 C.F.R. § 1.3 and 17 C.F.R. § 5.1(d)(2).

69.     7 U.S.C. § 6*o*(1) prohibits CPOs and APs of CPOs, whether registered with the Commission or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from (A) employing devices, schemes or artifices to defraud any client or participant or prospective client or participant, or (B) engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

70.     Defendants, while acting in an unregistered capacity, through use of the mails or any means or instrumentality of interstate commerce: (1) misappropriated Pool Participant funds; (2) made material misrepresentations and omissions with

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER EQUITABLE RELIEF

scienter regarding, among other things, the profitability of trading forex with Defendants; and (3) issued false monthly account statements to conceal their fraudulent conduct.

71.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6*o*(1).

72.     The foregoing acts, misrepresentations, omissions, and failures occurred within the scope of Nawabi's employment or office with Nawabi Enterprise and/or Hyperion.  Therefore, Nawabi Enterprise and/or Hyperion are liable for his acts, misrepresentations, omissions, and failures in violation of 7 U.S.C. § 6*o*(1),

73.     Nawabi controls Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7 U.S.C. § 6*o*(1).

74.     Each misappropriation, misrepresentation and omission of material fact, and false statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1).

**COUNT THREE**
**Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1),**
**and 17 C.F.R. § 5.3(a)(2) (2021)**
**(Failure To Register as a CPO**
**and as an AP of two CPOs**
**(All Defendants)**

75.     Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

76.     7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person:

engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or

through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—

    i.  commodity for future delivery, security futures product, or swap; [or]

    ii.  agreement, contract, or transaction described in [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection 2(c)(2)(D)(i) [of the Act.]

77.    Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO] . . . ."

78.    Subject to certain exceptions not relevant here, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) states that a

person, unless registered in such capacity as the Commission by rule, regulation, or order shall determine and a member of a futures association registered under section 21 of this title, shall not—

. . . .

(cc) operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant in connection with [retail forex agreements, contracts, or transactions].

79.    For the purposes of retail forex transactions, a CPO is defined in 17 C.F.R. § 5.1(d)(1) as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP, as defined in 17 U.S.C. § 1a(18), and who engages in retail forex transactions.

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER EQUITABLE RELIEF

80.     Except in circumstances not relevant here, 17 C.F.R. § 5.3(a)(2)(i) requires those that meet the definition of CPO under 17 C.F.R. § 5.1(d) to register as a CPO with the Commission.

81.     For the purposes of retail forex transactions, an AP of a CPO is defined in 17 C.F.R. § 5.1(d)(2) as any natural person associated with a CPO as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions) in any capacity that involves soliciting funds, securities or property for participation in a pooled investment vehicle or supervising persons so engaged.

82.     Except in certain circumstances not relevant here, 17 C.F.R. § 5.3(a)(2)(ii) requires those that meet the definition of an AP of a CPO under 17 C.FR. § 5.1(d) to register with the Commission.

83.     Nawabi Enterprise and Hyperion operated or solicited funds, securities, or property for a pooled investment vehicle from pool participants who were not ECPs, as defined by 7 U.S.C. § 1a(18), for the purpose of trading in retail forex transactions; thus, Nawabi Enterprise and Hyperion are acting as CPOs as define by 7 U.S.C. § 1a(11) and 17 C.F.R. § 5.1(d)(1).

84.     Nawabi Enterprise and Hyperion, while using the mails or means of interstate commerce in connection with their business as a CPO, are not registered with the Commission as a CPO,  in violation of 7 U.S.C. §§ 2I(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i).

85.     Nawabi associated with CPOs Nawabi Enterprise and Hyperion as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool and/or a pooled investment vehicle in retail forex; therefore, Nawabi acted as an AP of CPOs as defined by 17 C.F.R. §5.1(d)(2).

86.     Nawabi is not registered with the Commission as an AP of either CPO; thus, Nawabi acted as an unregistered AP of CPOs in violation of 17 C.F.R. § 5.3(a)(2)(ii).

87.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) states that it shall be

> unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves
>
> > (i)   the solicitation of funds, securities, or property for a participation in a commodity pool or
> >
> > (ii)  the supervision of any person or persons so engaged, unless such person is registered with the Commission under this chapter as an [AP] of such [CPO] . . . .

88.     While associated with Nawabi Enterprise and Hyperion, Nawabi, while acting in an unregistered capacity, solicited Pool Participant funds for the forex pool, in violation of 7 U.S.C. § 6k(2).

89.     Nawabi Enterprise and Hyperion supervised Nawabi and permitted him to solicit Pool Participants for the forex pool knowing that he was unregistered, in violation of 7 U.S.C. § 6k(2).

90.     The foregoing acts, omissions, and failures occurred within the scope of Nawabi's employment or office with Nawabi Enterprise and/or Hyperion.  Therefore, Nawabi Enterprise and Hyperion are liable for his acts, omissions, and failures in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1), and 17 C.F.R. § 5.3(a)(2) pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

91.     Nawabi controls Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C.

§ 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1), and 17 C.F.R. § 5.3(a)(2) (2021)

92.     Each instance that Nawabi Enterprise and Hyperion acted as a CPO but failed to register with the Commission as such is alleged as a separate and distinct violation.

93.     Each instance that Nawabi acted as an AP of a CPO but failed to register with the Commission as such is alleged as a separate and distinct violation.

**COUNT FOUR**
**Violation of 17 C.F.R. § 4.20(a)(1), (b)–(c) (2021)**
**(Failure To Operate Pool as Separate Entity; Failure To Receive Pool Participant Funds in Pool's Name; Commingling of Pool Funds)**
**(All Defendants)**

94.     Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

95.     17 C.F.R. § 5.4 (2021), states that 17 C.F.R. Pt. 4 applies to any person required to register as a CPO pursuant to 17 C.F.R. pt. 5 (2021).

96.     17 C.F.R. § 4.20(a)(1) requires a CPO, whether registered or not, to operate its pool as a legal entity separate from that of the CPO.

97.     17 C.F.R. § 4.20(b) prohibits a CPO, whether registered or not, from receiving pool funds in any name other than that of the pool.

98.     17 C.F.R. § 4.20(c) prohibits a CPO, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

99.     Nawabi Enterprise and Hyperion, while acting as CPOs, failed to operate the forex pool as a legal entity separate from Nawabi Enterprise and/or Hyperion; accepted Pool Participant funds into Nawabi-controlled bank accounts; and commingled the property of the forex pool with the property of others.

100.   By reason of the foregoing, Nawabi Enterprise and Hyperion violated 17 C.F.R. § 4.20(a)(1), (b)–(c).

101.   Nawabi controls Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 17 C.F.R. § 4.20(a)(1), (b)–(c).

102.   Each act of failing to operate a pool as a legal entity separate from that of the CPOs, improperly receiving pool participants' funds, and commingling the property of the pool with non-pool property, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 4.20(a)(1), (b)–(c).

## VI.   <u>RELIEF REQUESTED</u>

WHEREFORE, the Commission respectfully requests that this Court, as authorized by 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.   Find that Defendants violated 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6k(2), 6m(1), 6$o$(1)(A)–(B), 2(c)(2)(C)(iii)(I)(cc), and 17 C.F.R. §§ 4.20(a)(1), (b)–(c), 5.2(b)(1)–(3), 5.3(a)(2) (2021);

B.   Enter an order of permanent injunction permanently restraining, enjoining, and prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct described above, in violation of 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6k(2), 6m(1), 6$o$(1)(A)–(B), 2(c)(2)(C)(iii)(I)(cc), and 17 C.F.R. §§ 4.20(a)(1), (b)–(c), 5.2(b)(1)–(3), 5.3(a)(2);

C.   Enter an order of permanent injunction permanently restraining, enjoining, and prohibiting Defendants, and their affiliates, agents, servants, employees, assigns, attorneys, and all persons in active concert with them, from

directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by 7 U.S.C. § 1a(40));

2) Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2021)), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3) Having any commodity interests traded on any Defendants' behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9) (2021); and

7) Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

D.   Enter an order directing Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

E.      Enter an order requiring Defendants as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.      Enter an order directing Defendants as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Defendants and any of the pool participants whose funds were received by Defendants as a result of the acts and practices that constituted violations of the Act and Regulations as described herein;

G.      Enter an order directing Defendants to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114–74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* 17 C.F.R. § 143.8 (2021), for each violation of the Act and Regulations, as described herein;

H.      Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920, 2413(a)(2); and

I.      Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER EQUITABLE RELIEF

Dated:  April 26, 2022                Respectfully submitted,

                                      COMMODITY FUTURES
                                      TRADING COMMISSION

                                      /s/ James H. Holl
                                      JAMES H. HOLL, III. CA Bar. No. 177885
                                      W. DAMON DENNIS
                                      SARAH MATLACK WASTLER
                                      Attorneys for Plaintiff
                                      COMMODITY FUTURES
                                      TRADING COMMISSION
                                      1155 21st Street, N.W.
                                      Washington, D.C. 20581
                                      Telephone: (202) 418-5000
                                      jholl@cftc.gov
                                      wdennis@cftc.gov
                                      swastler@cftc.gov

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, RESTITUTION, AND OTHER
EQUITABLE RELIEF