UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Commodity Futures Trading Commission, | No. 2:22-cv-00717-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Eshaq M. Nawabi, et al., | |
| Defendants. | |

    Plaintiff Commodity Futures Trading Commission (CFTC) filed suit against defendants Eshaq Nawabi, Nawabi Enterprise, and Hyperion Consulting Inc., alleging various violations of the Commodity Exchange Act and CFTC regulations. The court granted the CFTC's ex parte motion for a statutory restraining order (SRO) and ordered defendants to show cause why a preliminary injunction should not issue. Nawabi consents to the entry of a preliminary injunction, but he seeks to tailor the proposed injunctive relief where he believes it clashes with his Fifth Amendment rights under the act-of-production doctrine. As explained below, the mechanics of a proper act-of-production analysis are somewhat unclear in this context, and the parties' submissions leave unanswered certain questions the court must resolve to rule on any focused Fifth Amendment invocation. Because Nawabi consents to a preliminary injunction and has not met his burden of demonstrating the need for blanket Fifth Amendment protection, the court will enter concurrently a preliminary injunction based on the CFTC's proposed order, while

preserving Nawabi's ability to make focused Fifth Amendment objections prospectively. The parties will be **directed** to file a joint status report proposing (1) a process for Nawabi's prospectively asserting his focused Fifth Amendment objections, and (2) a mechanism for the court's resolving those objections. The court explains its consideration of the Fifth Amendment issues below, for the parties' reference in preparing the joint status report.

I.   BACKGROUND

In April 2022, the CFTC filed a complaint against defendant Eshaq Nawabi, both in his individual capacity and as the "controlling person" of defendants Nawabi Enterprise and Hyperion Consulting Inc. *See generally* Compl., ECF No. 1. The CFTC alleges various violations of the Commodity Exchange Act and CFTC regulations related to defendants' disregarding what Nawabi calls "corporate formalities." Partial Opp'n at 9, ECF No. 21; *see, e.g.*, *id.* ¶ 7 (alleging Nawabi Enterprise and Hyperion failed to register as "commodity pool operators" and Nawabi failed to register as an "associated person" in violation of the Act and CFTC regulations); *id.* ¶ 8 (alleging Nawabi violated CFTC regulations "by failing to operate the pool as a separate entity, failing to receive funds in the pool's name, and commingling . . . pool funds with other assets").

More broadly, the CFTC alleges that since at least October 2019, Nawabi has operated a fraudulent scheme to solicit and misappropriate funds for a pooled investment in off-exchange retail foreign currency exchange contracts. *See id.* ¶ 1. Rather than use participants' funds to trade futures contracts as promised, Nawabi misappropriated the funds for his own benefit and to pay other pool participants "in a manner akin to a Ponzi scheme," and he issued false account statements to conceal trading losses and misappropriations.[1] *Id.* ¶ 4. The CFTC seeks injunctive and other equitable relief, as well as civil monetary penalties. *See generally* Compl.

The court granted the CFTC's ex parte motion for a statutory restraining order in late April 2022. *See* ECF No. 8. The SRO is indisputably broad. *See, e.g.*, *id.* ¶ 21 ("Representatives of the Commission shall be immediately allowed to inspect any records that, in part or in whole, contain,

---

[1] It appears Nawabi has continued to disseminate such account statements during the pendency of this litigation, assuring investors that he still possesses their equity. *See* Receiver's Second Status Report at 2, ECF No. 23.

relate, or refer to the business activities or business or personal finances of the Defendants[.]"); *id.* ¶ 32(a) (directing defendants to "[p]rovide the Temporary Receiver with a full detailed accounting of all assets, including the assets inside and outside of the United States that are held by each and every Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly, and the location of all records of the Receivership Estate"); *id.* ¶ 35(a) (ordering defendants to "deliver over to the Temporary Receiver possession and custody of all assets of the Receivership Defendants, wherever situated, including those owned beneficially or otherwise"). In granting the SRO, the court also ordered Nawabi to show cause why a preliminary injunction generally tracking the SRO's language should not issue. *Id.* ¶ 45. Both parties submitted briefs in response to the order to show cause, and the court heard arguments on July 13, 2022. *See* Partial Opp'n, ECF No. 21; Reply, ECF No. 24; Hr'g Mins., ECF No. 25.

## II.   DISCUSSION

As noted, Nawabi consents to the entry of a preliminary injunction, but he seeks to tailor the proposed injunctive relief to the extent he says it interferes with his Fifth Amendment privilege against self-incrimination. *See generally* Partial Opp'n; *see also* Stip. Prelim. Inj., Morris Decl. Ex. 2, ECF No. 22-2. Nawabi's arguments are somewhat difficult to pin down,[2] but he appears to argue the "act of production" doctrine relieves him of three obligations in connection with investor funds: (1) the need to identify bank accounts from which and to which investor funds were transferred; (2) the responsibility to repatriate investor funds; and (3) the obligation to create an accounting of his assets and a schedule of his passwords. *See* Partial Opp'n at 15–18. The CFTC submits Nawabi's arguments are overcome by three other doctrinal

---

[2] For instance, the introduction to Nawabi's brief previews numerous arguments that Nawabi neither develops nor contextualizes elsewhere in the filing. *See, e.g.*, Partial Opp'n at 7 (asserting provisions of the SRO, "as interpreted by the CFTC and temporary receiver," violate Nawabi's Fourth, Sixth and Fourteenth Amendment rights); *id.* at 6 (asserting receiver seized unknown "personal records," including documents protected by Nawabi's Fifth Amendment rights); *id.* (objecting without elaboration to appointment of permanent receiver). The court addresses only those arguments for which Nawabi provides more than a passing reference. *Cf. United States v. Pierce*, 561 F.2d 735, 741–42 (9th Cir. 1977) (declining to "determine[e] the extent of [defendant's] Fifth Amendment rights" because he "made a blanket refusal to answer any questions" and the court was thus "unable to evaluate his Fifth Amendment claim").

3

exceptions to that doctrine: the foregone conclusion doctrine, *see* Reply at 6; the required records doctrine, *see id.* at 6–7; and the collective entity doctrine, *see id.* at 7–8. The court first discusses the act of production doctrine before turning to the parties' other arguments.

### A.     The Act of Production Doctrine

#### 1.     In General

As the Fifth Amendment provides, "[n]o person . . . shall be [c]ompelled in any criminal case to be a [w]itness against himself." U.S. Const. Amend. V; *see also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (acknowledging Fifth Amendment may be invoked outside of criminal proceedings). It is well-settled that this privilege protects individuals against compelled testimonial communications. *See Miranda v. Arizona*, 384 U.S. 436, 460 (1966). But testimonial communications are not limited to statements; acts can also convey messages:

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.

*Fisher v. United States*, 425 U.S. 391, 410 (1976); *United States v. Hubbell*, 530 U.S. 27, 36 (2000). As *Fisher* indicates, a court conducting an act of production analysis does not ask whether the "contents of the papers produced" are incriminating, 425 U.S. at 410; rather, it probes implicit communications made by virtue of the act of producing documents, *see United States v. Oriho*, 969 F.3d 917, 925 (9th Cir. 2020). In performing the analysis, the Ninth Circuit directs courts to examine "four facets of an implicit communication that together support invocation of the self-incrimination privilege." *Id.* Specifically, courts ask whether: "(1) compulsion is involved; (2) a statement is being communicated; (3) the statement relies on the truth-telling of the defendant; and (4) the statement carries the risk of incrimination." *Id.* (citing *Fisher*, 425 U.S. at 409–15). "Whether the act of producing documents in response to a subpoena is both testimonial and incriminating is a difficult issue whose resolution depends 'on the facts and circumstances of particular cases or classes thereof.'" *Dorokee Co. v. United States* (*In re*

*Grand Jury Subpoena*), 697 F.2d 277, 279 (10th Cir. 1983) (quoting *Fisher*, 425 U.S. at 411)). The facts and circumstances of this particular case present unique challenges, as discussed below.

### 2. As Applied Here

Courts generally have applied the act of production doctrine in the context of criminal document subpoenas, which have strict specificity requirements. *See United States v. Nixon*, 418 U.S. 683, 700 (1974) (articulating standard); *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) (explaining criminal documentary subpoenas "allow[] only for the gathering of specifically identified documents"); Wright & Miller, Federal Practice and Procedure § 275 (2022) ("A subpoena that fails to describe any specific documents is too broad[.]"). The SRO and the CFTC's proposed preliminary injunction, by contrast, speak in broad terms about large, sometimes vague categories of documents. *See, e.g.*, SRO Section II ¶ 21 (noting CFTC is "allowed to inspect any records that, in part or in whole, contain, relate, or refer to the business activities or business or personal finances of the Defendants, including . . . hard-copy documents and electronically stored information, . . . whether they are in the possession of the Defendants or others"); *see also* Proposed Prelim. Inj. ¶ 8, ECF No. 24-1 ("All requirements in Section II of the SRO requiring Defendants to immediately allow representatives of the CFTC to inspect any Records relating or referring to the business activities or business or personal finances of Defendants . . . shall continue in full force and effect."). This breadth contrasts sharply with the specificity required in criminal document subpoenas, which have been the subject of the extant decisional law. At hearing, the parties agreed the case law addressing such subpoenas is applicable here.

Even so, it remains unclear how this court should analyze Nawabi's act-of-production objections. As explained above, the act of production doctrine turns not on documents' contents but on implicit concessions about "the existence of the papers demanded," their "possession or control by the [defendant]," and the defendant's "belief that the papers are those described in the subpoena." *Fisher*, 425 U.S. at 410; *see also Hubbell*, 530 U.S. at 37 ("Whether the constitutional privilege protects . . . the act of production itself[] is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating.").

5

Still, several circuits suggest a court should analyze the contents of documents responsive to a subpoena *in camera*. *See, e.g.*, *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004) (finding district court erred by "refusing to examine [subpoenaed] documents *in camera* to determine whether [defendant]'s act of producing them would have had incriminating aspects"); *United States v. Grable*, 98 F.3d 251, 257 (6th Cir. 1996) (noting "act of production" privilege "appl[ies] only on a document-by-document basis"; upon proper invocation of the privilege, court should "order the party to produce the [disputed] documents . . . to the court for an *in camera* inspection"); *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir. 1991) (remanding case to district court "with instructions to determine, through an *in camera* inspection, the existence of [defendant's] fifth amendment [act of production] privilege in this case"). Other courts have called this approach into question:

> [A] document-by-document analysis by [defendant] would not be useful to determining whether [defendant] has validly asserted the act-of-production privilege, and the SEC has not explained how such a proffer would even work. The act-of-production privilege does not focus on the content of the individual documents because it is not the content of the documents—which was not compelled—but the act of producing them that might trigger the act-of-production protection under the Fifth Amendment. The content of the individual documents is not relevant to whether producing them would violate the Fifth Amendment. . . . The Court cannot require any offer of proof that the documents are, in fact, incriminating, because that would defeat the purpose of the privilege.

*Sec. & Exch. Comm'n v. Forster*, 147 F. Supp. 3d 223, 228–29 (S.D.N.Y. 2015) (internal quotation marks and citation omitted); *U.S./I.R.S. v. Lanoie*, 403 Fed. App'x 328, 334 (10th Cir. 2010) (unpublished) (rejecting as "meritless" defendant's argument that district court should have conducted an *in camera* hearing to determine if his Fifth Amendment claim had a basis in fact). Whatever the right approach for materials targeted by a criminal document subpoena, it is even less clear what mechanism this court should use to analyze Nawabi's generalized objections to the broad mandates of the CFTC's proposed preliminary injunction. As discussed below, the uncertainties outlined above are reflected in the broad nature of the parties' briefing.

**B.     Parties' Arguments**

    **1.     Nawabi's Arguments**

Nawabi contends the act of production doctrine protects him from a number of requirements in the SRO and, relatedly, the CFTC's proposed preliminary injunction. Nawabi's position is well-taken in part given the SRO's breadth and certain specific arguments that he makes. *See, e.g.*, Partial Opp'n at 7 (objecting to using the "contents of his mind" to provide receiver with a "detailed accounting" of his assets because disclosure could expose him to criminal liability (quoting SRO ¶ 32)).

At the same time, Nawabi's act of production arguments are deficient in several ways. First, Nawabi conflates distinct categories of material. *See, e.g.*, *id.* at 15–16 (discussing without differentiating the SRO's requirements that Nawabi identify bank accounts, repatriate funds held abroad, and admit to information regarding bank transfers). Second, he offers mostly overarching conclusions rather than focused arguments grounded in the circumstances of this case. *See, e.g.*, *id.* at 16, 18 (arguing complying with the CFTC's proposed preliminary injunction would "surely" be "an important link in a chain of evidence"; "It is beyond dispute that the CFTC's Complaint triggers and implicates Mr. Nawabi's Fifth Amendment constitutional rights."). Third, Nawabi is imprecise in his references to the SRO itself. *See, e.g.*, *id.* at 15–16 (analyzing requirement that Nawabi "admit the dates and accuracy of the dates" of transfers indicated in bank documents and citing Section VIII for that requirement, although the SRO contains no such requirement, and Section VIII is titled "Stay on Actions Against the Receivership Defendants"). Most importantly, Nawabi never addresses the core question presented here: whether his compelled production would amount to a tacit concession that certain documents exist, are authentic, and are in his custody or control. *See Hubbell*, 530 U.S. at 36 n.19 ("[T]he act of production could constitute protected testimonial communication *because* it might entail implicit statements of fact: by producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." (emphasis added)); *Doe v. United States*, 487 U.S. at 209–10 ("[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose

7

information. Only then is a person compelled to be a 'witness' against himself."). Indeed, some of Nawabi's arguments appear to focus on the contents of requested documents, rather than any testimonial aspect inherent in Nawabi's producing them. *See, e.g.*, Partial Opp'n at 15 (arguing producing bank records would require Nawabi to confess to the dates on which he transferred funds between accounts). *Contra Hubbell*, 530 U.S. at 37 ("Whether the constitutional privilege protects . . . the act of production itself[] is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating."). In sum, Nawabi has not advanced a focused Fifth Amendment objection the court can rule on at this time.

### 2. The CFTC's Arguments

As noted, the CFTC submits that if Nawabi's act of production arguments do carry weight, they are unavailing in light of three exceptions to the doctrine: the foregone conclusion doctrine, *see* Reply at 6; the required records doctrine, *see id.* at 6–7; and the collective entity doctrine, *see id.* at 7–8. The CFTC's arguments, however, also lack any meaningful analysis, as explained below.

#### a) Foregone Conclusion Doctrine

The "foregone conclusion" doctrine "allows for circumvention of the self-incrimination privilege if the government already has the information it is seeking to compel." *Oriho*, 969 F.3d at 927 (citation omitted); *see also Fisher*, 425 U.S. at 411 (characterizing foregone conclusion as one where sought-after evidence "adds little or nothing to the sum total of the Government's information"). For this doctrine to apply, "the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and [the defendant's] possession or control of the documents." *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1202 (9th Cir. 2013) (citation omitted). The government bears the ultimate burdens of production and proof on all three elements. *See In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 910, 912 (9th Cir. 2004); *see also id.* at 910 (government must "establish the existence of the documents sought and [defendant's] possession of them with 'reasonable

particularity'[3] before the existence and possession of the documents could be considered a foregone conclusion and production therefore would not be testimonial" (citing, e.g., *Hubbell*, 530 U.S. at 44)); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (party moving for preliminary injunction must demonstrate it is warranted by "a clear showing." (citation, quotation marks, and emphasis omitted)). Determining whether the government has met its burden requires a "highly fact-intensive inquiry that looks at the quantum of information possessed by the government before it issued the relevant subpoena." *Sideman & Bancroft*, 704 F.3d at 1202 (internal quotation marks and citations omitted).

Despite the court's need to conduct a "highly fact-intensive" review, the CFTC submits only one citation-less paragraph:

> Here, prior to enforcement of the SRO, the CFTC was aware that Mr. Nawabi emailed account statements from his Gmail account; communicated with pool participants via email and text message; purported to trade forex via an offshore trading platform, TradersWay; and maintained four separate bank accounts he used to receive, disburse, and misappropriate pool participant funds. Because the CFTC is aware of the existence of such documents, and Mr. Nawabi's control over them, the act of Mr. Nawabi's production adds little, if anything, to the quantum of information already available to the CFTC. Thus, the production of the business records in Mr. Nawabi's possession does not constitute protected testimony under the Fifth Amendment.

Reply at 6. This is insufficient to satisfy the CFTC's burden of establishing the foregone conclusion exception. The CFTC did demonstrate its knowledge of various documents in its motion for an SRO. *See generally* Mot. SRO. Some of those documents might fall within the foregone conclusion exception, but it is not the court's job to comb approximately 200 pages of exhibits and speculate about their authenticity, Nawabi's control over them, and the extent to which they entitle the CFTC to compel production by Nawabi. *See* Mot. SRO Exs., ECF No. 4-1 at 21–176 & ECF No. 4-2 at 11–41. Moreover, to the extent the CFTC argues that its awareness of some documents

---

[3] The court notes that this test, like so many other rules implicated by this matter, does not fit neatly with the present facts. *See* Orin S. Kerr, *Compelled Decryption and the Privilege Against Self-Incrimination*, 97 Tex. L. Rev. 767, 775 (2019) ("Whatever the merits of the 'reasonable particularity' standard in the specific context of subpoenaed documents, the test is notably unilluminating as to the government's burden outside that context.").

entitles it to all of Nawabi's documents, the court rejects that argument. *See United States v. Bright*, 596 F.3d 683, 693–94 (9th Cir. 2010).

b) Required Records Doctrine

The required records doctrine negates the act of production privilege for "records required by law to be kept[.]" *Shapiro v. United States*, 335 U.S. 1, 17 (1948). The doctrine's primary rationale is that if the government requires an individual to keep records as a condition of voluntarily participating in a regulated activity, the government should be able to inspect those records. *See Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 556 (1990). The doctrine applies if: "(1) the purpose of the government's inquiry is regulatory, not criminal; (2) the information requested is contained in documents of a kind the regulated party customarily keeps; and (3) the records have public aspects." *In re Grand Jury Proceedings (Doe M.D.)*, 801 F.2d 1164, 1168 (9th Cir. 1986) (citing *Grosso v. United States*, 390 U.S. 62, 67–68 (1968)).

The CFTC argues the required records doctrine applies here because Nawabi was an "associated person" of a Commodity Pool Operator (CPO) under the Commodity Exchange Act, and "[t]he documents required to be kept by CPOs under the Act clearly satisfy this standard." Reply at 7 (citing *In Matter of Commodity Futures Trading Comm'n v. Filkey*, No. 97-2819, 1997 WL 461992, at *1 (N.D. Ill. Aug. 5, 1997)). These arguments are not persuasive for several reasons. First, the CFTC simply asserts rather than demonstrates that Nawabi qualifies as an associated person under the Act.[4] *Contra Filkey*, 1997 WL 461992, at *1 ("[The CFTC] concedes . . . that it has to show that defendant is a [commodity trading advisor under the Act] before his Fifth Amendment privilege is overborne."). Second, the CFTC does not explain what types of documents CPOs must keep under the Act. Even if the CFTC had made both of these necessary showings, its conclusory assertion that the documents "clearly" satisfy the required records doctrine, without more, is insufficient to negate Nawabi's act of production privilege, if it in fact applies.

/////

---

[4] The CFTC alleges Nawabi unlawfully failed to register as an associated person of Nawabi Enterprise and Hyperion. Compl. ¶ 7.

But the CFTC's failure thus far to establish the required records doctrine's applicability does not foreclose the argument. At hearing, Nawabi argued CFTC regulations do not apply in the first place because neither he nor the entity defendants registered in accordance with CFTC regulations. The court rejects this argument outright as simply incorrect. *Cf., e.g.*, *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979) ("It would be anomalous indeed if an advisor could escape the fiduciary duties of [an anti-fraud provision in the Commodity Exchange Act] by avoiding required registration."); *Filkey*, 1997 WL 461992, at *2 ("We also do not believe defendant can avoid the recordkeeping requirements of the statute by failing to register. Registered CTAs are required to keep records that the CFTC, in its regulatory capacity, can review. If a CTA can avoid disclosure by failing to register, it would open up a large loophole in the regulatory scheme."). The CFTC may seek to demonstrate the required records exception applies in the future, if circumstances support its invocation.

c) Collective Entity Doctrine

The collective entity doctrine "reflects the fact that the [Fifth Amendment] right to resist compelled self-incrimination is a 'personal privilege.'" *In re Twelve Grand Jury Subpoenas*, 908 F.3d at 528 (quoting *Bellis v. United States*, 417 U.S. 85, 90 (1974)). It has been "settled" for more than a century "that a corporation has no Fifth Amendment privilege[.]" *Braswell*, 487 U.S. at 105. Accordingly, neither a corporation nor its agents or officers may assert the Fifth Amendment privilege or the act of production privilege in order to avoid disclosing corporate records in response to a subpoena. *See Bellis*, 417 U.S. at 90 (noting although "an artificial entity can only act to produce its records through its individual officers or agents," "no artificial organization may utilize the personal privilege against compulsory self-incrimination"); *In re Twelve Grand Jury Subpoenas*, 908 F.3d at 531 ("[T]here are no circumstances under which a records custodian may resist a subpoena for a collective entity's records on Fifth Amendment grounds."). Rather, the Fifth Amendment's privilege applies only "to individuals and to sole proprietorships, which do not, as a legal matter, exist separately from the individuals who comprise them." *In re Twelve Grand Jury Subpoenas*, 908 F.3d at 528 (citing *Braswell*, 487 U.S. at 104, 108); *see also Bellis*, 417 U.S. at 95 (finding three-member partnership was collective

11

1   entity because it had an "institutional identity independent of its individual partners"). Thus, "an
2   individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a
3   collective entity which are in his possession in a representative capacity, even if these records
4   might incriminate him personally." *Bellis*, 417 U.S. at 88; *see also Braswell*, 487 U.S. at 110
5   ("[T]he custodian's act of production is not deemed a personal act, but rather an act of the
6   corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount
7   to a claim of privilege by the corporation -- which of course possesses no such privilege.").

8       The CFTC submits this doctrine applies here, maintaining it is "entitled to collect and
9   review the documents as provided by the SRO" because "Hyperion—a corporation organized in
10  the state of California—has no Fifth Amendment privilege against self-incrimination." Reply at
11  7–8. In other words, the CFTC maintains it is entitled to all of Nawabi's documents because
12  Hyperion played an unspecified role in his fraudulent scheme.

13      The court is not persuaded by this argument. The court agrees the collective entity
14  doctrine applies to Hyperion—an incorporated entity—to the extent it was involved in Nawabi's
15  fraudulent scheme to solicit and misappropriate funds. *See In re Twelve Grand Jury Subpoenas*,
16  908 F.3d 525, 528 (9th Cir. 2018) (right to resist compelled self-incrimination "applies to
17  individuals and to sole proprietorships, which do not, as a legal matter, exist separately from the
18  individuals who comprise them, but corporations and other collective entities do not enjoy the
19  privilege." (internal quotation marks and citation omitted)); *In re Grand Jury Proceedings (The*
20  *John Doe Co., Inc.)*, 838 F.2d 624, 627 n.3 (1st Cir. 1988) (choice to incorporate brings with it
21  "all the attendant benefits and responsibilities of being a corporation," including the responsibility
22  "to produce and authenticate records of the corporation . . . ."). However, as the CFTC notes,
23  there were at least two entities involved here, Hyperion Inc. and Nawabi Enterprise, and the
24  CFTC does not argue Nawabi Enterprise qualifies as a "collective entity." The involvement of
25  these two entities—one bound by the collective entity doctrine, one not so bound—appears to
26  require the court to distinguish between documents belonging to Hyperion[5] and Nawabi

---

[5] At hearing, Nawabi's counsel suggested that Hyperion played a limited role in Nawabi's fraudulent activity, if it played any role at all.

Enterprise. The CFTC does not address this issue. Nor does the CFTC address how Nawabi's unlawfully intermingling operations, records, and funds belonging to himself, Hyperion, and Nawabi Enterprise impacts its ability to gather information from Hyperion. In light of these uncertainties, the court is unable to determine the extent to which the collective entity doctrine applies here and in fact it need not before entering the preliminary injunction. The CFTC may seek to clarify the questions left unanswered by its briefing in the future, if need be.

### III.   CONCLUSION

Having considered the parties' arguments, relevant caselaw, and the record in this case, the court finds it cannot and need not rule on Nawabi's Fifth Amendment invocation at this juncture. Because Nawabi has consented to a preliminary injunction, the court will enter the CFTC's proposed preliminary injunction to the extent it is not inconsistent with Nawabi's Fifth Amendment objections, incorporating language preserving Nawabi's right to assert focused objections in the future.

The parties are **directed** to file **within fourteen days** a joint status report proposing (1) a process for Nawabi's asserting focused Fifth Amendment act-of-production arguments, and (2) a mechanism for the court's resolving those assertions. The court's minute order (ECF No. 29) resetting the pretrial scheduling conference to October 6, 2022, is **vacated**. The pretrial scheduling conference is **reset** for December 15, 2022, at 2:30 p.m., with the parties' joint status report due no later than December 1, 2022.

As discussed at hearing, and as provided in section XII of the preliminary injunction the court issues concurrently, the receiver is directed to file and serve periodic requests for payment itemizing the time and nature of services rendered; Nawabi is ordered to either pay for or object to each itemization. As the parties agreed at the hearing, the receiver may liquidate the vehicles discussed in the receiver's second status report, subject to his providing notice to potential third-party claimants.

IT IS SO ORDERED.

DATED: October 5, 2022.

CHIEF UNITED STATES DISTRICT JUDGE