1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  COMMODITY FUTURES TRADING
COMMISSION,

12

13                    Plaintiff,

14           v.

15  ESHAQ M. NAWABI, individually and
d/b/a/ NAWABI ENTERPRISE, and

16  HYPERION CONSULTING, INC.,

17                    Defendants.

18

Civ. Case No.  2:22-cv-00717-KJM JDP

**CONSENT ORDER OF PERMANENT
INJUNCTION AND OTHER EQUITABLE
RELIEF**

19

20              **I.     INTRODUCTION**

21           On April 26, 2022, Plaintiff Commodity Futures Trading Commission ("CFTC" or

22  "Commission") filed a Complaint for Injunctive Relief, Civil Monetary Penalties, Restitution, and

23  Other Equitable Relief ("Complaint") against Eshaq M. Nawabi, individually and d/b/a/ Nawabi

24  Enterprise, and Hyperion Consulting, Inc. (collectively, "Defendants") for violations of the

25  Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations

26  ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2021) (ECF No. 1).

27  /////

28  /////

## II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against the Defendants, without a trial on the merits or any further judicial proceedings, other than deciding the issue of damages, including disgorgement, restitution, civil monetary penalties, interest, cost and fees to be determined at a later date, the Defendants:

1.    Consent to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief Against the Defendants ("Consent Order");

2.    Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledge service of the Summons, Complaint, and all other filings and orders entered herein;

4.    Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to 7 U.S.C. § 13a-1;

5.    Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

6.    Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

7.    Waive:

(a) the entry of findings of fact and conclusions of law in this action under Fed. R. Civ. P. 52(a)(2);

(b) Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

(c) Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(d) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(e) Any and all rights of appeal from this action;

8.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if the Defendants now or in the future reside outside the jurisdiction of this Court;

9.      Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waive any objection based thereon;

10.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their:  (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendants shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.     By consenting to entry of this Consent Order, Defendants neither admit nor deny the allegations of the Complaint or any Findings of Fact or Conclusions of Law in this Consent Order, except the admissions as to jurisdiction and venue above.  Defendants reserve the right to state facts and make legal arguments relevant to the determinations to be made by the Court of the amount of any monetary relief to be awarded in this Action.  This Consent Order shall not be construed to admit allegations pertaining to the amount of disgorgement, restitution, civil penalties, interest, cost, and fees that are to be considered by this Court at a later date;

12.     Consent to the use of the Findings of Facts and Conclusions of Law in this Consent Order in this proceeding and in any other proceeding brought by the Commission or the Receiver or to which the Commission or the Receiver is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

/////

3

13.     Do not consent, however, to the use of this Consent Order, or the Findings of Fact and Conclusions of Law herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: statutory disqualification proceeding, proceeding in bankruptcy, or receivership, or proceeding to enforce the terms of this Consent Order;

14.     Do not consent to the use of this Consent Order, or the Findings of Fact or Conclusions of Law herein, by any other party in any other proceeding;

15.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding; provided, however, that Defendants do not agree that any provision of this Consent Order inures to the benefit of, or confers rights on, any other person or entity to seek any legal or equitable remedy that does not exist independently from this Consent Order, or that this Consent Order or any provision herein is admissible in any proceeding not involving the Commission.

### III.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to 7 U.S.C. § 13a-1, as set forth herein.

**A.     Findings of Fact**

**The Parties to this Consent Order**

16.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the responsibility of administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1–26, and the Commission's Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

17.     Defendant **Eshaq M. Nawabi ("Nawabi")** is a resident of either Salida, California, or Manteca, California.  Nawabi is the Chief Executive Officer of Hyperion

1    Consulting Inc.  Nawabi also d/b/a Nawabi Enterprise.  Nawabi has never been registered with

2    the Commission in any capacity.

3         18.     Defendant **Nawabi Enterprise** is an unincorporated California company.  Nawabi

4    listed Nawabi Enterprise's mailing address as a specific location in Salida, California, which,

5    upon information and belief, is also one of Nawabi's home addresses.  Nawabi is Nawabi

6    Enterprise's control person.  Nawabi Enterprise has never been registered with the Commission in

7    any capacity.

8         19.     Defendant **Hyperion Consulting Inc.,** was incorporated in California on

9    November 23, 2020.  Hyperion's address was listed as either in Tracy, California, or Manteca,

10   California.  Nawabi is both Hyperion's Chief Executive Officer ("CEO") and control person.

11   Hyperion has never been registered with the Commission in any capacity.

12        **<u>Defendants' Fraudulent Solicitation</u>**

13        20.     From at least October 2019 through the filing of the instant action on April 26,

14   2022 (the "Relevant Period"), Nawabi held himself out both as an unincorporated d/b/a "Nawabi

15   Enterprise" and as the CEO of Hyperion.

16        21.     During the Relevant Period, Defendants, through the acts of Nawabi, solicited

17   prospective Pool Participants through telephone calls, emails, text messages, and word of mouth,

18   seeking out individuals who would agree to let Nawabi trade forex on their behalf, ostensibly

19   through his business ventures:  Nawabi Enterprise and/or Hyperion.

20        22.     Rather than open an account in the name of either or both enterprises, in the fall of

21   2019, Nawabi opened a joint personal checking account in his name and in the name of a family

22   member at JP Morgan Chase Bank, N.A. ("Chase"), (the "Chase account").  Nawabi subsequently

23   opened two additional personal accounts at (i) Bank of America N.A. in August 2021 and (ii)

24   Wells Fargo Bank, N.A. in August 2021, as well as a business account at (iii) U.S. Bank N.A. in

25   Hyperion's name in December 2020 that Defendants used to receive and/or disburse Pool

26   Participant funds (with the Chase account, collectively, the "Nawabi-controlled bank accounts").

27   The Nawabi-controlled bank accounts contained funds that were unrelated to Defendants'

28   purported forex pool.

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

23.     Throughout the Relevant Period, Defendants, through Nawabi, falsely and fraudulently represented to Pool Participants that:  (1) Defendants had historically made large profits (between 8–25% per month) for themselves and Pool Participants from trading forex; (2) Pool Participants would realize profits of 8–25% per month on their funds with minimal risk; (3) Defendants would trade forex with the funds deposited by Pool Participants; and (4) Pool Participants could withdraw their funds within three to five business days of any such request.

24.     Additionally, Defendants represented to Pool Participants, *inter alia*, that Nawabi:

(i)     pools his clients' funds together and uses an algorithm he created to determine when to make trades on foreign currency;

(ii)    earned 10–12% per month during the prior 24-month period, 13–15% per month over the prior 12 months, and 8–9% per month over the prior three months;

(iii)   operates two pooled trading accounts:  a "conservative" account and an "aggressive" account, which earns about 20–25% per month;

(iv)    is being advised by an "SEC attorney" on all appropriate legal issues;

(v)     has $11 million in "his Forex investment fund" of which roughly 85% is of his own money; and

(vi)    would return a Pool Participant's funds within three to five business days after the Pool Participant notified Nawabi of their intent to withdraw funds from the forex pool.

25.     The statements described in paragraphs above are false.  As set forth more fully below, Defendants did not transfer any Pool Participant funds to a forex trading account. Moreover, Defendants repeatedly failed to timely return Pool Participants' funds upon their request.

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

26.     Defendants also, among other things, failed to disclose that they were not properly registered with the Commission; thus, they were not authorized to trade forex with Pool Participants' funds.

27.     Based upon Defendants' misrepresentations and omissions, Pool Participants entered into a written "Investment Agreement" with either Nawabi Enterprise or Hyperion, with Nawabi acting as the signatory for both entities.  Nawabi provided the Investment Agreement to Pool Participants by email, or through other means or instrumentalities of interstate commerce.

28.     The Investment Agreement provided that "the Company shall earn profit [sic] for the Investor in a monthly changing APR [sic] until the termination.  All profits left in will be compounded monthly."  The Investment Agreement also provided that the sole compensation for Defendants for their forex trading services was to be from "monthly profits" and varied in amount between 10% to 15%.  The Investment Agreement included a provision indicating that Pool Participant funds were "secured" by "security equity in the fund," and the "Minimum balance of equity" was identified as "$5,237,819.72."

29.     Once an "Investment Agreement" was executed, Nawabi deposited Pool Participants' funds into a Nawabi-controlled bank account, for participation in the purported pooled forex trading.

30.     Through their misrepresentations and omissions¸ at least seven Pool Participants deposited no less than $543,000 into the Nawabi-controlled accounts.

**Defendants Misappropriated Pool Participants' Funds**

31.     During the Relevant Period, rather than using Pool Participants' funds for trading forex, as Defendants had represented they would, Defendants, through the acts of Nawabi, instead used those Pool Participant funds for Nawabi's personal benefit and to make Ponzi payments.

32.     Specifically, Nawabi used Pool Participants' funds for, among other things, purchases at luxury car dealerships, retail purchases, an Onlyfans.com account, meals, entertainment, travel, and cash withdrawals.

33.     As one example, on January 24, 2020, a Pool Participant made a $50,000 deposit into the Chase account and all of the funds were used to pay expenses unrelated to trading forex.

7

Nawabi used the majority of the funds for a $40,000 payment to a car dealer in Redwood City, California, and used the remainder to pay for food, his cell phone expense, and gas.

34.     To the extent some Pool Participants received funds back from Defendants, those funds did not originate from any known forex trading firm.  In at least one instance, funds paid to a Pool Participant were misappropriated by Defendants from other Pool Participants, in the nature of a Ponzi scheme.

35.     Further, as recently as March of 2022, Ponzi payments were made by Nawabi to a Pool Participant.

36.     To date, despite repeated requests to Nawabi for the return of their funds, multiple Pool Participants have not received their funds back from the Defendants.

37.     For example, in mid-October 2021, one Pool Participant attempted to terminate his Investment Agreement with Defendants, and demanded a return of his funds.  However, Nawabi failed to return any of his funds, instead, making numerous implausible excuses regarding his failure to do so.

38.     In addition, Nawabi made fraudulent excuses for not returning funds to at least one Pool Participant as recently as November 2021.

**False Account Statements**

39.     To conceal their lack of forex trading and misappropriation of Pool Participant money, Defendants, through Nawabi, issued false monthly account statements and made other oral and written misrepresentations to lull Pool Participants into leaving their funds in Defendants' control.

40.     Defendants routinely failed to send pool participants monthly account statements or when they did send them, they were often sent late.  This conduct caused more than one Pool Participant to make repeated requests to Nawabi to send the monthly account statements.

41.     When Nawabi did issue account statements to Pool Participants supposedly reflecting forex trading and profits, they were false.

42.     For example, despite receiving monthly account statements showing gains of roughly 8–9% per month, one Pool Participant began to question the legitimacy of Nawabi's

forex trading because he noticed that his monthly account statements appeared to have been altered, as the columns and rows were aligned differently on different parts of the page, suggesting that the text had been manually shifted (rather than caused by a file conversion error).

43.    Further, several Pool Participants noted that their statements contained inaccurate/conflicting information, as the stated amount of profit earned from the trading did not match the profit percentage calculated.

44.    In addition to issuing the monthly account statements, Nawabi advised some Pool Participants, both orally and in written communications, that their funds were making profits.

45.    The profit representations made by Defendants in the monthly account statements and in other oral and written communications are false.  There is no evidence that Defendants transferred any Pool Participant funds to a forex trading account.  Rather, Defendants misappropriated Pool Participant funds for Nawabi's personal use and to make Ponzi payments.

**Nawabi Enterprise and Hyperion Acted As Unregistered CPOs, and Nawabi Acted as an Unregistered AP of a CPO**

46.    During the Relevant Period, Nawabi Enterprise and Hyperion, through Nawabi, each acted as an unregistered CPO by soliciting funds from individuals who were not Eligible Contract Participants ("ECP"), as defined in 7 U.S.C. § 1a(18)(A)(xi), for a forex pool that was not an ECP, as defined in 7 U.S.C. § 1a(18)(A)(iv), for the purpose of engaging in retail forex transactions.

47.    During the Relevant Period, Nawabi acted as an unregistered AP of two CPOs by soliciting Pool Participants and prospective Pool Participants for participation in a forex pool, while associated with Nawabi Enterprise and Hyperion as a partner, officer, employee, or similar agent.

**Nawabi Was a Controlling Person of Nawabi Enterprise and Hyperion**

48.    Nawabi was a controlling person of both Nawabi Enterprise and Hyperion.  As stated above, Nawabi was interchangeable with Nawabi Enterprise.  In fact, Nawabi did business as Nawabi Enterprise, an unincorporated entity.  Nawabi was also Hyperion's CEO.  Specifically, Nawabi executed Investment Agreements on behalf of Nawabi Enterprise and Hyperion;

9

represented to Pool Participants that he was personally and solely responsible for trading Pool

Participant funds; and was the sole source of information for Pool Participants regarding Nawabi

Enterprise and Hyperion, including any information regarding the status of their funds.  Nawabi

also had control over the Nawabi-controlled bank accounts into which Pool Participants

transferred funds for the purported purpose of trading forex.

### Nawabi Acted as an Agent for Nawabi Enterprise and Hyperion

49.     Through his solicitation of prospective and existing Pool Participants and his

continued communication with Pool Participants regarding their purported trading success on

behalf of both Nawabi Enterprise and Hyperion, Nawabi acted as an agent of both entities.

### B.  Conclusions of Law

### Jurisdiction and Venue

50.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts

have original jurisdiction over civil actions commenced by the United States or by any agency

expressly authorized to sue by Act of Congress).  In addition, 7 U.S.C. § 13a-1, provides that the

U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive

relief or to enforce compliance with the Act whenever it shall appear to the Commission that a

person has engaged, is engaging, or is about to engage in any act or practice constituting a

violation of any provision of the Act, or any rule, regulation, or order thereunder.  7 U.S.C.

§ 2(c)(2)(C), subjects the forex solicitations and transactions at issue in this action to, *inter alia*, 7

U.S.C. §§ 6b, 6*o*.

51.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because

Defendants reside in or transacted business in this judicial district.

### Count I—Forex Fraud by Misappropriation, Misrepresentations and Omissions, and False Statements

52.     7 U.S.C. § 6b(a)(2)(A)–(C) makes it unlawful:

(2)   for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market—

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person[.]

53.   7 U.S.C. § 1a(18)(A)(xi), defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.

54.   7 U.S.C. § 1a(18)(iv), defines a commodity pool as having assets exceeding $5,000,000 and "formed and operated by a person subject to regulation under this chapter or a foreign person performing a similar role or function subject as such to foreign regulation (regardless of whether each investor in the commodity pool or the foreign person is itself an eligible contract participant) provided, however, that for purposes of section 2(c)(2)(B)(vi) of this title and section 2(c)(2)(C)(vii) of this title, the term 'eligible contract participant' shall not include a commodity pool in which any participant is not otherwise an eligible contract participant."

55.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex "shall be subject to . . . [7 U.S.C. §] 6b," except in circumstances not relevant here. Moreover, under 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to forex transactions described herein "as if" they were a contract of sale of a commodity for future delivery because they were "offered to, or entered into with, a person that is not an" ECP. Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an

11

account or pooled investment vehicle that is offered for the purpose of trading, or that trades,"

forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

56.     17 C.F.R. § 5.2(b) (2021) provides, in relevant part, that:

> [i]t shall be unlawful for any person, by use of the mails or by any
> means or instrumentality of interstate commerce, directly or indirectly,
> in or in connection with any retail forex transaction:
>
> (1)     To cheat or defraud or attempt to cheat or defraud any person;
>
> (2)     Willfully to make or cause to be made to any person any false
> report or statement or cause to be entered for any person any
> false record; or
>
> (3)     Willfully to deceive or attempt to deceive any person by any means
> whatsoever.

57.     Defendants, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in connection with retail forex transactions, knowingly or recklessly:  (1) misappropriated Pool Participant funds; (2) made material misrepresentations and omissions with scienter regarding, among other things, the profitability of trading forex with Defendants; and (3) issued false monthly account statements to conceal their fraudulent conduct.

58.     By the conduct described above, Defendants violated 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) (2021).

59.     The foregoing acts, misrepresentations, omissions, and failures occurred within the scope of Nawabi's employment or office with Nawabi Enterprise and/or Hyperion.  Therefore, Nawabi Enterprise and/or Hyperion are liable for his acts, misrepresentations, omissions, and failures in violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) (2021), pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021).

60.     Nawabi controlled Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) (2021).

61.     Each misappropriation, misrepresentation and omission of material fact, and false statement, stated herein, is a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) (2021).

### Count II—Fraud and Deceit by CPOs and an AP of CPOs

62.     7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person:

> engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> > i.   commodity for future delivery, security futures product, or swap; [or]
> >
> > ii.  agreement, contract, or transaction described in [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection 2(c)(2)(D)(i) [of the Act].

63.     Pursuant to 17 C.F.R. § 5.1(d)(1) (2021), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities, or property for a pooled investment vehicle and engages in retail forex transactions is defined as a CPO.

64.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex and accounts or pooled investment vehicles in retail forex "shall be subject to . . . [7 U.S.C. §] 6*o*," except in circumstances not relevant here.

65.     Regulation 1.3, 17 C.F.R. § 1.3 (2021), defines an AP of a CPO as any natural person associated with:

> (3) A [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged[.]

66.     Pursuant to 17 C.F.R. § 5.1(d)(2) (2021), any person associated with a CPO "as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves:  (i) [t]he solicitation of funds,

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

securities, or property for a participation in a pooled investment vehicle; or (ii) [t]he supervision of any person or persons so engaged" is an AP of a CPO.

67.     During the Relevant Period, Nawabi Enterprise and Hyperion solicited funds, securities, or property for a pooled investment vehicle for the purpose of engaging in retail forex transactions; therefore, Nawabi Enterprise and Hyperion were acting as CPOs, as defined by 7 U.S.C. § 1a(11) and 17 C.F.R. § 5.1(d)(1) (2021).

68.     During the Relevant Period, Nawabi was associated with Nawabi Enterprise and Hyperion, both CPOs, as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool. Therefore, Nawabi was an AP of two CPOs as defined by 17 C.F.R. § 1.3 and 17 C.F.R. § 5.1(d)(2) (2021).

69.     7 U.S.C. § 6o(1) prohibits CPOs and APs of CPOs, whether registered with the Commission or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from (A) employing devices, schemes or artifices to defraud any client or participant or prospective client or participant, or (B) engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

70.     Defendants, while acting in an unregistered capacity, through use of the mails or any means or instrumentality of interstate commerce: (1) misappropriated Pool Participant funds; (2) made material misrepresentations and omissions with scienter regarding, among other things, the profitability of trading forex with Defendants; and (3) issued false monthly account statements to conceal their fraudulent conduct.

71.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6o(1).

72.     The foregoing acts, misrepresentations, omissions, and failures occurred within the scope of Nawabi's employment or office with Nawabi Enterprise and/or Hyperion.  Therefore, Nawabi Enterprise and/or Hyperion are liable for his acts, misrepresentations, omissions, and failures in violation of 7 U.S.C. § 6o(1).

73.     Nawabi controlled Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7 U.S.C. § 6*o*(1).

74.     Each misappropriation, misrepresentation and omission of material fact, and false statement stated herein is  a separate and distinct violation of 7 U.S.C. § 6*o*(1).

### Count III—Failure To Register as a CPO and as an AP of Two CPOs

75.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO] . . . ."

76.     Subject to certain exceptions not relevant here, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) states that a

> person, unless registered in such capacity as the Commission by rule, regulation, or order shall determine and a member of a futures association registered under section 21 of this title, shall not—
>
> . . . .
>
> (cc) operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant in connection with [retail forex agreements, contracts, or transactions].

77.     For the purposes of retail forex transactions, a CPO is defined in 17 C.F.R. § 5.1(d)(1) (2021) as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP, as defined in 17 U.S.C. § 1a(18) (2021), and who engages in retail forex transactions.

78.     Except in circumstances not relevant here, 17 C.F.R. § 5.3(a)(2)(i) (2021) requires those that meet the definition of CPO under 17 C.F.R. § 5.1(d) (2021) to register as a CPO with the Commission.

79.     For the purposes of retail forex transactions, an AP of a CPO is defined in 17 C.F.R. § 5.1(d)(2) (2021) as any natural person associated with a CPO as a partner, officer,

15

employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions) in any capacity that involves soliciting funds, securities or property for participation in a pooled investment vehicle or supervising persons so engaged.

80.    Except in certain circumstances not relevant here, 17 C.F.R. § 5.3(a)(2)(ii) (2021) requires those that meet the definition of an AP of a CPO under 17 C.FR. § 5.1(d) (2021) to register with the Commission.

81.    Nawabi Enterprise and Hyperion operated or solicited funds, securities, or property for a pooled investment vehicle from pool participants who were not ECPs, as defined by 7 U.S.C. § 1a(18), for the purpose of trading in retail forex transactions; thus, Nawabi Enterprise and Hyperion acted as CPOs as defined by 7 U.S.C. § 1a(11) and 17 C.F.R. § 5.1(d)(1) (2021).

82.    Nawabi Enterprise and Hyperion, while using the mails or means of interstate commerce in connection with their business as a CPO, were not registered with the Commission as a CPO, in violation of 7 U.S.C. §§ 2I(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i) (2021).

83.    Nawabi was associated with CPOs Nawabi Enterprise and Hyperion as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool and/or a pooled investment vehicle in retail forex; therefore, Nawabi acted as an AP of CPOs as defined by 17 C.F.R. §5.1(d)(2) (2021).

84.    Nawabi is not registered with the Commission as an AP of either CPO; thus, Nawabi acted as an unregistered AP of CPOs in violation of 17 C.F.R. § 5.3(a)(2)(ii) (2021).

85.    Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) states that it shall be

> unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves
>
> (i)    the solicitation of funds, securities, or property for a participation in a commodity pool or

/////

16

>      (ii)  the supervision of any person or persons so engaged, unless such person is registered with the Commission under this chapter as an [AP] of such [CPO] . . . .

86.    While associated with Nawabi Enterprise and Hyperion, Nawabi, while acting in an unregistered capacity, solicited Pool Participant funds for the forex pool, in violation of 7 U.S.C. § 6k(2).

87.    Nawabi Enterprise and Hyperion supervised Nawabi and permitted him to solicit Pool Participants for the forex pool knowing that he was unregistered, in violation of 7 U.S.C. § 6k(2).

88.    The foregoing acts, omissions, and failures occurred within the scope of Nawabi's employment or office with Nawabi Enterprise and/or Hyperion.  Therefore, Nawabi Enterprise and Hyperion are liable for his acts, omissions, and failures in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1), and 17 C.F.R. § 5.3(a)(2) (2021) pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021).

89.    Nawabi controlled Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1), and 17 C.F.R. § 5.3(a)(2) (2021).

90.    Each instance that Nawabi Enterprise and Hyperion acted as a CPO but failed to register with the Commission as such is a separate and distinct violation of the Act and Regulations.

91.    Each instance that Nawabi acted as an AP of a CPO but failed to register with the Commission as such is a separate and distinct violation of the Act and Regulations.

### Count IV—Failure to Operate Pool as Separate Entity, Failure to Receive Pool Participant Funds in Pool's Name, Commingling of Pool Funds

92.    17 C.F.R. § 5.4 (2021), states that 17 C.F.R. Pt. 4 applies to any person required to register as a CPO pursuant to 17 C.F.R. pt. 5 (2021).

93.   17 C.F.R. § 4.20(a)(1) (2021) requires a CPO, whether registered or not, to operate its pool as a legal entity separate from that of the CPO.

94.   17 C.F.R. § 4.20(b) (2021) prohibits a CPO, whether registered or not, from receiving pool funds in any name other than that of the pool.

95.   17 C.F.R. § 4.20(c) (2021) prohibits a CPO, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

96.   Nawabi Enterprise and Hyperion, while acting as CPOs, failed to operate the forex pool as a legal entity separate from Nawabi Enterprise and/or Hyperion; accepted Pool Participant funds into Nawabi-controlled bank accounts; and commingled the property of the forex pool with the property of others.

97.   By reason of the foregoing, Nawabi Enterprise and Hyperion violated 17 C.F.R. § 4.20(a)(1), (b)–(c) (2021).

98.   Nawabi controlled Nawabi Enterprise and Hyperion, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Nawabi Enterprise's and Hyperion's conduct alleged in this Count.  Therefore, under 7 U.S.C. § 13c(b), Nawabi is liable for Nawabi Enterprise's and Hyperion's violations of 17 C.F.R. § 4.20(a)(1), (b)–(c) (2021).

99.   Each act of failing to operate a pool as a legal entity separate from that of the CPOs, improperly receiving pool participants' funds, and commingling the property of the pool with non-pool property stated herein, is a separate and distinct violation of 17 C.F.R. § 4.20(a)(1), (b)–(c) (2021).

### IV.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

100.   Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

    a.   making material misrepresentations and false statements and/or engaging in misappropriation in connection with trading in futures, forex, and/or options in

1    violations of 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6*o*(1), and 17 C.F.R. §§ 5.2(b)

2    (2021);

3    b.    failing to register as a CPO or as an AP of a CPO, in violation of 7 U.S.C.

4    §§ 2(c)(2)(C)(iii)(I)(cc), 6m(l), 6k(2), and 17 C.F.R. § 5.3(a)(2)(i) (2021);

5    c.    failing to operate a commodity pool as an entity cognizable as a legal entity

6    separate from its operator, failing to receive and hold pool participant funds in

7    accounts in the name of the commodity pool, or commingling the property of a

8    commodity pool and pool participants' funds with their own property in

9    violation of 17 C.F.R. § 4.20(a)-(c) (2021); and

10    101.    Defendants are also permanently restrained, enjoined and prohibited from directly

11    or indirectly:

12    a.    trading on or subject to the rules of any registered entity (as that term is

13    defined in 7 U.S.C. § 1a (40));

14    b.    entering into any transactions involving "commodity interests" (as that term is

15    defined in 17 C.F.R. § 1.3 (2021), for their own personal account or for any

16    account in which they have a direct or indirect interest;

17    c.    having any commodity interests traded on their behalf;

18    d.    controlling or directing the trading for or on behalf of any other person or

19    entity, whether by power of attorney or otherwise, in any account involving

20    commodity interests;

21    e.    soliciting, receiving or accepting any funds from any person for the purpose of

22    purchasing or selling any commodity interests;

23    f.    applying for registration or claiming exemption from registration with the

24    Commission in any capacity, and engaging in any activity requiring such

25    registration or exemption from registration with the Commission, except as

26    provided for in 17 C.F.R. § 4.14(a)(9) (2021); and/or

27    g.    acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a)) (2021),

28    agent or any other officer or employee of any person (as that term is defined in

19

7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2021).

## V.     MISCENALLEOUS PROVISIONS

102.     Nothing in this Consent Order shall preclude the Commission from continuing to seek or the Court from appointing the Temporary Receiver, Gerard F. Keena II, as Permanent Receiver with the full powers of a federal equity receiver as set forth in ECF No. 24-1.

**A.     Cooperation**

103.     Subject to Defendants' Constitutional rights, including any Fifth Amendment rights to the extent applicable, Defendants shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in this action, and in any current or future CFTC investigation or action related thereto.  Defendants shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.

104.     Subject to Defendants' Constitutional rights, including any Fifth Amendment rights to the extent applicable, Defendants and all other persons or entities served with a copy of this Consent Order shall cooperate fully with all reasonable requests of the Receiver and his retained professionals including transferring funds at the Receiver's direction and producing records related to the Defendants' accounts as well as providing such information as the Receiver deems necessary and appropriate to identify the Defendant's pool participants to whom the Receiver, in his sole discretion, may determine to include in any plan for distribution of any restitution payments.

105.     Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

/////

/////

/////

20

Notice to CFTC:

Rick Glaser
Deputy Director, Division of Enforcement
James H. Holl, III
Chief Trial Attorney
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, D.C. 20581
Telephone: (202) 418-5000

Notice to Defendants:

Stanley C. Morris
Brian T. Corrigan
CORRIGAN & MORRIS LLP
12300 Wilshire Blvd., Suite 210
Los Angeles, California 90025

All such notices to the CFTC shall reference the name and docket number of this action.

106. Change of Address/Phone: Until such time as Defendants satisfy in full any Restitution Obligation and/or CMP Obligation to be later determined, Defendants shall provide written notice to the Commission by reasonable means of any change to their telephone numbers and mailing addresses within ten calendar days of the change.

107. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

108. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

109. Waiver: The failure of any party to this Consent Order to require performance of any provision of this Consent Order shall not affect the right of the part to later enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

110.   Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action in order to determine the issue of damages, including disgorgement, restitution, civil monetary penalties, interest, cost and fees.  This Court shall also retain jurisdiction to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

111.   Injunctive and Equitable Relief:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

112.   Counterparts and Electronic Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by e-mail or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

113.   Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

114.   Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction and Other Equitable Relief* forthwith and without further notice.

/////

1    **CONSENTED TO AND APPROVED BY:**

2

3    **PLAINTIFF COMMODITY FUTURES**          **DEFENDANTS ESHAQ M. NAWABI,**
     **TRADING COMMISSION**,                   **individually and d/b/a NAWABI**
4                                              **ENTERPRISE**, **and HYPERION**
                                               **CONSULTING, Inc.**
5    /s/  *James H. Holl*
6    James H. Holl, III CA Bar No. 177885      *Eshaq  Nawabi*
     Sarah Matlack Wastler
7    COMMODITY FUTURES TRADING                 Dated:  November 18, 2022
     COMMISSION
8    1155 21st Street, NW
     Washington, D.C. 20581
9    Telephone: (202) 418-5000                 /s/ *Stanley C. Morris**
     jholl@cftc.gov                            Stanley C. Morris, SBN 183620
10   swastler@cftc.gov                         Brian T. Corrigan, SBN 143188
     Dated: November 21, 2022                  CORRIGAN & MORRIS LLP
11                                             12300 Wilshire Blvd., Suite 210
                                               Los Angeles, California 90025
12                                             Telephone: 310.394.2800
                                               scm@cormorllp.com
13                                             bcorrigan@cormorllp.com
                                               Dated:  November 18, 2022
14
                                               *Counsel to Defendant Eshaq M. Nawabi,*
15                                             *Individually*
16
                                               * *With permission*
17

18

19                                             **RECEIVER**
20                                             *Gerard F. Keena*
21                                             _____
22                                             GERARD F. KEENA, II
                                               2001 Milvia Street
23                                             Berkeley, California 94704
                                               Tel:     (510) 995-0158
24                                             Fax:     (510) 244-4477
                                               Email: gkeena@bayarearg.com
25                                             Dated:  November 18, 2022
26

27                                             /s/  *Aron M. Oliner*
                                               Aron M. Oliner
28                                             **DUANE MORRIS LLP**

                              23

Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Tel: (415) 957 3104
Email: roliner@duanemorris.com
Dated: November 18, 2022

*Attorneys for Court-Appointed Receiver*
*Gerard F. Keena, II*

\* With permission

•   •   •

**IT SO ORDERED, at Sacramento, California on this 5th day of December, 2022, at 4:25 p.m.**

_____
CHIEF UNITED STATES DISTRICT JUDGE

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF