UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>       Plaintiff,<br><br>  v.<br><br>ESHAQ M. NAWABI, individually and d/b/a, NAWABI ENTERPRISE, and HYPERION CONSULTING INC.,<br><br>       Defendants. | No. 2:22-cv-00717 KJM-JDP<br><br>ORDER |

  Receiver Gerard F. Keena II and Receiver's counsel request compensation and reimbursement of expenses to date. For the reasons below, the court **grants the requests.**

## I. BACKGROUND

### A. Receiver's Claims

  Plaintiff the Commodity Futures Trading Commission ("Commission"), brought this securities action under the Commodity Exchange Act and Commission regulations against defendants Eshaq Nawabi, Nawabi Enterprise and Hyperion Consulting, Inc. Compl. at 1, ECF No. 3. In response to the Commission's request, this court initially granted an ex parte statutory

restraining order and appointed a temporary receiver to, in part, "preserve assets, investigate and determine customer claims, [and] determine unlawful proceeds retained by Defendants . . . ." SRO Order at 3–4, ECF No. 8 (Sealed). Specifically, the court appointed Gerard F. Keena II as temporary receiver to "conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent an irreparable loss, damage, or injury to any customers or clients of any Receivership Defendants' business activities." *Id.* at 9–10. Following a hearing, *see* Hr'g Mins. (May 11, 2022), ECF No. 14, the court entered a preliminary injunction appointing Keena as Receiver "with the full powers of an equity receiver for Defendants and their affiliates or subsidiaries owned or controlled by Defendants," Preliminary Injunction at 5, ECF No. 33. The court also authorized the Receiver and his associates, including counsel, to receive "reasonable compensation for the performance of duties . . . and for the cost of actual out-of-pocket expenses incurred by them for those services . . . (1) reasonably likely to benefit the receivership estate; or (2) necessary to the administration of the estate." *Id.* at 8. The court ordered the Receiver to file periodic requests for payment, including an itemized list of the time and nature of services. *Id.* at 8–9. On December 16, 2022, the court entered a consent order imposing a permanent injunction, which, in part, appointed the Receiver as the permanent receiver in this matter. Consent Order, ECF No. 50.

       The Receiver now requests compensation and reimbursement of expenses incurred between April 28, 2022, and September 30, 2022 on behalf of the Receivership and Receiver's counsel, Duane Morris. Mot. at 2, ECF No. 36. The Receiver seeks $80,707.50 in fees and $12,245.77 in costs, and counsel seeks $59,010.50 in fees and $102.46 in costs. *Id.* at 4, In total, the Receiver and counsel seek a combined $152,066.23. The Receiver voluntarily reduced fees for the receivership by approximately 25 percent. *Id.* The Receiver's request outlines services rendered during this period, including taking possession of assets and financial records from Nawabi's residence, interviewing Nawabi, tracing investor funds to assets, investigating investor assets and finances and working with counsel to "begin the effort of liquidating certain assets for the benefit of the Estate." *Id.* at 2–3. Receiver's counsel "provided legal advice, advised the Receiver with respect to orders of the court, and actively participated in all legal matters on the

2

1  docket." *Id.* at 3.  The Receiver also filed a "Receiver's Inventory," listing the defendant's assets
2  the Receiver has taken possession of.  *See* Receiver's Inventory, ECF No. 37.
3       Nawabi opposed the Receiver's request, Opp'n, ECF No. 41, and the Receiver replied,
4  Reply, ECF No. 46.[1]  The Receiver also filed detailed billing records for both the receivership and
5  counsel.  *See* Receiver Records; Counsel Records.  The court heard argument on January 27,
6  2023.  *See* Hr'g Mins., ECF No. 54.  Aron Oliner appeared for the Receiver, James Holl, III
7  appeared for the Commission and Stanley Morris appeared for Nawabi.  The court granted the
8  parties leave to file supplemental briefing on the reasonableness of counsel's fees.  The Receiver
9  filed a supplemental brief, Supp. Brief, ECF No 57, Nawabi filed a late opposition, which the
10 court has considered, Supp. Opp'n, ECF No. 58, and the Receiver replied, Supp. Reply, ECF No.
11 59.  The court then submitted the matter and decides it here.

     **B.**    **Summary of Fee's requested**

The Chart below summarizes the fees and expenses requested by the Receiver and counsel:

| Applicant | Fees Requested | Hours Worked | Blended Rate[2] | Expenses Requested | Total |
|---|---|---|---|---|---|
| **Receiver** | $ 80,707.50 | 249.1 | $287.50 | $12,245.77 | $92,953.27 |
| **Counsel** | $59,010.50 | 79.1 | $746.02 | $102.46 | $59,112.96 |

**II.**    **RECEIVER'S REQUEST FOR COMPENSATION**

     **A.**    **Legal Standard**

District courts have wide discretion to set compensation for receivers and their counsel. *Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934).  At the same time, courts do not sign blank checks. *Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, No. 15-226, 2016 WL

---

[1] The Receiver provided attachments in the same filing as the Reply.  Ex. A Receiver Records (Receiver Records); Ex. C Counsel Records (Counsel Records).  The court refers to the exhibits using their numbers and the page numbers applied by the CM-ECF system.
[2] The blended rate refers to the average hourly rate charged by individuals within the Receivership or counsel's firm.

727073, at *1 (S.D. Cal. Feb. 24, 2016). "The receiver bears the burden to demonstrate to the court [any] entitlement to [the] payment of fees and costs in the amount requested." *Id.* (citing 65 Am. Jur. 2d, Receivers § 228 (2d ed. Feb. 2016 update)). Additionally, "[t]he Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate." *Sec. & Exch. Comm'n v. Small Bus. Cap. Corp.*, No. 12-03237, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013).

"An award of interim fees is appropriate 'where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate.'" *Id.* at *2 (citing *In re Alpha Telcom, Inc.*, No. 01-1283, 2013 WL 840065, at *3 (D. Or. Mar. 6, 2013)). Courts examine a variety of factors in awarding interim fees, including the level of difficulty faced by the receiver, the value and quality of the receiver's services, the "economy of administration, the burden that the estate may be able to bear [and] the amount of time [and skill] required, although not necessarily expended." *In re Imperial "400" Nat., Inc.*, 432 F.2d 232, 238 (3rd Cir. 1970); *see also Sec. & Exch. Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973). Courts need not evaluate the receiver's billing entries line by line but may use "percentage cuts as a practical means of trimming fat from a fee application" if necessary. *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

Courts often do not grant requests for an entire interim fee pending resolution of litigation. Instead, they generally will "withhold a portion of the requested interim fees because 'until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought.'" *Small Bus. Cap. Corp.*, 2013 WL 2146605, at *2 (citing *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *3); *see also Sec. & Exch. Comm'n v. Byers*, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). By withholding some interim allowances, courts avoid "encourag[ing] procrastination" and can wait until the end of litigation to "appropriately measure[]" the receiver's services. *In re Imperial "400" Nat., Inc.*, 432 F.2d at 235.

**B.    Analysis**

The court first reviews the points Nawabi makes in his opposition to the Receiver's request and the Receiver's response, and then examines the reasonableness of the Receiver's request.

**1.    Nawabi's Opposition**

Nawabi disputes the Receiver's request on five grounds. First, he argues the request contains insufficient detail and does not show the Receiver provided any benefit to the receivership estate. Opp'n at 2–3. In response, the Receiver states he used his "reasonable business judgment" in conducting his work to ensure it would benefit the receivership. Reply at 2–3, 5. Having carefully reviewed them, the court finds the Receiver's records and counsel's records contain sufficient detail. Second, Nawabi asserts the request is misleading, pointing to mistakes in the Receiver's inventory list, Opp'n at 4, which the Receiver states were "not made intentionally," Reply at 6. Mistakes in a receiver's inventory do not mean a court must deny a receiver's request; rather the court may adjust the reimbursement using percentage cuts to compensate for mistakes or overbilling, if any. *Cf. New York State Ass'n for Retarded Child., Inc.,* 711 F.2d at 1142 (imposing five percent cut on receiver's reimbursement due to "numerous excessive or duplicative entries."). Third, Nawabi objects to the general tone of the request, claiming the Receiver has "cast[] aspersions" on him to "bolster" his claims. Opp'n at 5. The Receiver asserts Nawabi was uncooperative and did not "provide critical information to the Receiver needed to administer the estate." Reply at 6. It is not the court's job to police the tone of briefings absent a motion to strike specific language or the presence of clearly offensive or uncivil language, which the court does not find here. The pending motion here is for reimbursement, and as such the court focuses only on the reasonableness of the request. Fourth, Nawabi claims the court's preliminary injunction, which includes a "limitless asset freeze," is too broad and puts him in an "untenable situation." Opp'n at 6. This matter does not provide the correct avenue to address Nawabi's concern in this respect. Nawabi has filed a separate motion for limited relief from the asset freeze, and the court will analyze the merits of that motion in a separate order. *See* Mot. for Limited Relief, ECF No. 45. Fifth, Nawabi argues the request does

not "satisfy a cost-benefit analysis." Opp'n at 7. Nawabi claims the court should apply the well-known lodestar method in determining the reasonableness of fees and asks the court to scrutinize the type of work performed, which he argues "did not involve complex commodities laws." *Id.* at 8. The Receiver points to the Receiver's records and counsel's records to rebut Nawabi's claim. Reply at 7. This argument is addressed at length below.

### 2. Receivership Costs

After reviewing the billing records before the court, the court finds the Receiver's request reasonable and grants the request subject to payment of three-quarters of the total amount now. The Receiver's records provide the court with detailed accounts of the Receiver's activities. *See generally* Receiver Records. The Receiver classifies his work into five categories: (1) "taking possession of . . . and attempting to liquidate" Nawabi's property, (2) conducting financial investigations, (3) "interviewing former investors" to learn about Nawabi's business, (4) investigating Nawabi's crypto assets and (5) "preparing for and attending hearings." Reply at 4. These five categories are delineated well in the records and reflect work on complex issues, likely made more difficult given the Receiver's claim that Nawabi has not been fully cooperative "in disclosing and identifying assets of the estate."[3] Reply at 3. Work in each of the five categories provides a benefit to the Receivership. *See* Opp'n at 2; *In re Imperial "400" Nat., Inc.*, 432 F.2d at 238. Given the high level of difficulty of the work required here on behalf of the court, the court grants the Receiver's request for reimbursement of $80,707.50 in fees. *See Wealth Mgmt., Inc.*, 2016 WL 727073, at *2 ("All fees are meticulously documented and presented in such a way that the Court could clearly evaluate the tasks performed, hours expended, [and] the hourly rate for each task . . . ."). The court authorizes the interim payment of 75 percent of the fees, $64,556.00, with the remaining amount to be paid at the conclusion of the estate. *See Sec. & Exch. Comm'n v. BIC Real Est. Dev. Corp.*, No. 116-00344, 2019 WL 5862292, at *3 (E.D. Cal. Nov. 8, 2019) (granting in full receiver's request for fee reimbursement but authorizing payment of only 75% in interim). This 25 percent holdback will allow the court to "appropriately

---

[3] Nawabi maintains he is "respectfully asserting his Fifth Amendment rights," and it would be "patently misleading" to construe this invocation as improper behavior. Opp'n at 6.

6

measure[]" the benefit of the receiver's services to the estate— a "critical factor[] . . . in setting a fee award"—at the completion of this case. *In re Imperial "400" Nat., Inc.*, 432 F.2d at 235; *Byers*, 590 F. Supp. 2d at 648.

The Receiver also requests $12,245.77 to reimburse expenses. These expenses include mileage and travel costs, PACER[4] access services, shipment costs, "search and seizure support services" and auction costs. Nawabi does not oppose these expenses, *see generally* Opp'n, which are directly connected to the Receiver's work managing the estate. The court grants the Receiver's request for reimbursement of expenses and authorizes payment in full at this time.

### III.  RECEIVER'S COUNSEL'S REQUEST FOR COMPENSATION

#### A.  Legal Standard

In receivership cases, "[c]ourts typically determine reasonable attorneys' fees based on (i) the percentage of recovery method or (ii) the lodestar method." *Byers*, 590 F. Supp. 2d at 644. Because the full benefits and recovery of the receivership estate are not known during review of an interim request for compensation, courts apply the lodestar method. *Id.; see also BIC Real Est. Dev. Corp.*, 2019 WL 5862292, at *2–3 (comparing billing rates to "similarly complex services in the community" when determining attorney's fees in receivership case.). "To calculate the 'lodestar,' the [c]ourt must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work." *Arias v. Ford Motor Co.*, No. 18-1928, 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020) (citing *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999)). "The reasonable hourly rate is the rate prevailing in the community for similar work." *Id.* (citing, inter alia, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013)). "The relevant community is the community in which the court sits." *Id.* (citing *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)). "If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Id.* (citations omitted).

---

[4] The PACER system is a court generated database that provides public access to court electronic records. Black's Law Dictionary 550 (4th Pocket ed. 2011).

Additionally, counsel in receiverships should also "be awarded moderate fees and not extravagant ones." *Byers*, 590 F. Supp. 2d at 648. By granting moderate compensation, courts "avoid even the appearance of a windfall" for counsel, *Sec. & Exch. Comm'n v. Goren*, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974)). Moderate compensation is especially prudent "[a]s a policy matter" in the event the defrauded victims themselves could have little prospect of recovery, which is yet to be determined in this case. *See Byers*, 590 F. Supp. 2d at 645.

**B.     Analysis**

Counsel worked a total of 78.8 hours on receivership tasks for the first interim period covered by the request. Counsel Records at 44, 50. Counsel requests compensation based on the work of two attorneys: specifically, $56,175 in compensation for a partner who billed 74.9 hours with an hourly rate of $750, and $2,835 for an associate who billed 4.2 hours with an hourly rate of $675. *Id.* Counsel also requests reimbursement of $102.46 in travel expenses. Tasks performed by counsel included preparing for court hearings, communicating with clients and reviewing documents regarding receivership assets. Counsel Record at 39–50. Counsel has provided a declaration describing the complexity of this case, as well as Nawabi's lack of cooperation, asserting these factors made it necessary to hire "counsel familiar with [] tactics [of those who engage in similar conduct] and fraudulent transfer litigation." Supp. Brief at 4. Counsel also declares its billing rates are reasonable for this type of case in this community. In support, counsel cites to six other cases in which experienced attorneys billed hourly rates between $795 and $950 for similar work, including "Ponzi cases, claw back litigation and fraudulent transfer cases." Oliner Decl. at 3, ECF No. 57-1. Nawabi disputes counsel's declaration and points to six other receivership actions in which attorneys' rates ranged from $225 to $526.50.[5] Supp. Opp'n at 3–4. However, as Receiver notes, Supp. Reply at 2, the five actions venued in this district are distinguishable because they are routine Chapter 7 or 11

---

[5] The Receiver asks this court to strike Nawabi's opposition because it was untimely. Supp. Reply at 1. However, the Receiver was able to respond to the opposition, so the court considers it.

bankruptcy filings. Here, unlike routine bankruptcy cases, the government has brought charges under complex securities laws and the Receiver is investigating alleged fraudulent activities implicating millions of dollars, or the equivalent in crypto currency. Because counsel has shown its hourly rate is within range of the "rate[s] prevailing in the community for similar work" the court approves counsel's request. *Arias*, 2020 WL 1940843, at *3 (citing, inter alia, *Gonzalez*, 729 F.3d at 1200).

On balance, because "the court has a strong interest in preserving the funds . . . for the benefit of the" victims and because counsel has not yet provided the court with a budget for future services, the court will moderate counsel's request, applying the same principles used in holding back a portion of the Receiver's request. *Sec. & Exch. Comm'n v. Small Bus. Cap. Corp.*, No. 12-03237, 2013 WL 6701928, * 3 (N.D. Cal. Dec. 19, 2013); *Byers*, 590 F. Supp. 2d at 645. At hearing, counsel agreed a 25 percent holdback at this point is acceptable. Therefore, the court reduces the reimbursement amount requested from $59,112.96 to 75 percent of this total, or $44,334.72. At the conclusion of the receivership, counsel may renew its request for reimbursement of the additional 25 percent and the court will reconsider counsel's request at that time in the context of the outcome of the case. The court also grants counsel's undisputed request for reimbursement of travel expenses in the amount of $102.46.

## IV.    CONCLUSION

For the reasons above, the court approves a partial payment of both the Receiver and Receiver's counsel's request for reimbursement of fees. The court authorizes a 75 percent payment **of $64,556.00 to the Receiver and $44,334.72 to Receiver's counsel. The parties may renew their requests for compensation as to the remaining 25 percent at the conclusion of the case. The court also approves the full reimbursement of expenses for both the Receiver, $12,245.77, and for counsel, $102.46. In total, the court authorizes a total interim payment of $76,801.77 to the Receiver and $44,437.18 to counsel.**

/////

/////

/////

1     This order resolves ECF No. 36.

2     IT IS SO ORDERED.

3  DATED: March 9, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE